**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **MAIN STREET AMERICA ASSURANCE COMPANY,** | ) |
| 4601 Touchton Road East, Suite 3400, | ) |
| Jacksonville, Florida 32246 | ) |
| | ) **CIVIL ACTION** |
| **Plaintiff,** | ) |
| **v.** | ) **No. 2:19-cv-04241-JCJ** |
| | ) |
| **CONNOLLY CONTRACTORS, INC.,** | ) |
| 1229 Valley Road | ) |
| Glen Mills, PA 19342 | ) |
| | ) |
| **and** | ) |
| | ) |
| **GLENN M. WHITE BUILDERS, INC.** | ) |
| 4 Zachary Drive | ) |
| West Chester, PA 19382 | ) |
| **Defendants.** | ) |
| | ) |

## AMENDED COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff Main Street America Assurance Company ("Main Street"), by and through its undersigned counsel, hereby files this Amended Complaint seeking declaratory relief, and avers as follows:

### PARTIES

1.      Main Street is a corporation organized and existing under the laws of the state of Florida, and has its principal place of business at 4601 Touchton Road East, Suite 3400, Jacksonville, Florida 32246.

2.      Upon information and belief, defendant Connolly Contractors, Inc. ("Connolly Contractors") is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, and has its principal place of business at 1229 Valley Road, Glen Mills, Pennsylvania 19342.

3.      Upon information and belief, defendant Glenn M. White Builders, Inc. ("Glenn White") is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, and has its principal place of business at 4 Zachary Drive, West Chester, Pennsylvania 19382.

## JURISDICTION AND VENUE

4.      Main Street hereby restates and incorporates by reference the averments of the preceding Paragraphs, as though same were set forth at length herein.

5.      This Court has jurisdiction over this matter under the Declaratory Judgment Act, 28 U.S.C. § 2201; and under 28 U.S.C. § 1332, as the citizenship of the parties is diverse and the amount in controversy exceeds $75,000, as set forth herein.

6.      Venue is proper in the United States District Court for the Eastern District of Pennsylvania because the contracts at issue in the instant litigation were entered into in the Eastern District of Pennsylvania.

## THE POLICY

7.      Main Street hereby restates and incorporates by reference the averments of the preceding Paragraphs, as though same were set forth at length herein.

8.      Main Street issued the following policies of businessowners' insurance (collectively, the "Policies") to "Connolly Contractors, Inc.":

(a)      Main Street Policy Number MPU9531P, which had effective dates of August 24, 2015 to August 24, 2016 and is attached hereto as Exhibit "1" (the "2015 Policy");

(b)      Main Street Policy Number MPU9531P, which had effective dates of August 24, 2016 to August 24, 2017 and is attached hereto as Exhibit "2" (the "2016 Policy");

(c)      Main Street Policy Number MPU8041R, which had effective dates of August 24, 2017 to August 24, 2018 and is attached hereto as Exhibit "3" (the "2017 Policy"); and

2

      (d)     Main Street Policy Number MPU8041R, which had effective dates of August 24, 2018 to August 24, 2019 and is attached hereto as Exhibit "4" (the "2018 Policy").

9.     In addition to the Policies, Main Street issued two commercial umbrella insurance policies to Connolly Contractors (collectively, the "Umbrella Policies"), which bore Main Street policy number CUU9531P, and which had effective dates of August 24, 2015 to August 24, 2016 (the "2015 Umbrella Policy"); and August 24, 2016 to August 24, 2017 (the "2016 Umbrella Policy"), respectively. *See* Exhibits "5" and "6."

10.     Connolly Contractors' umbrella insurance coverage was cancelled in 2017 at the request of Connolly Contractors. *See* Exhibit "7."

11.     Connolly Contractors is the named insured on the Policies. *See* Ex. 1 at 2015 POLICY 007; Ex. 2 at 2016 POLICY 014; Ex. 3 at 2017 POLICY 009; Ex. 4 at 2018 POLICY 010.

12.     Subject to the terms, conditions, and exclusions in the Policies, the Policies provided, *inter alia*, a Liability and Medical Expenses Policy Limit of $1,000,000; a Products/Completed Operations Aggregate Policy Limit of $2,000,000; and a General Aggregate Policy Limit of $2,000,000. *See id*.

13.     The Declarations Pages classify the named insured—Connolly Contractors—as a "Corporation." *See id*.

14.     The Policies thus define "Insured," in pertinent part, as:

     **C. Who Is An Insured**

       **1.** If you are designated in the Declarations as:

> d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

*See* Ex. 1 at 2015 POLICY 061.

15.     The Policies further provide that:

> 2. Each of the following is also an insured:
>
> a. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:
>
> \*     \*     \*
>
> (2) "Property damage" to property:
>
>   (a) Owned, occupied or used by,
>
>   (b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by
>
> you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

*See id.* at 2015 POLICY 061-062.

16.     The Policies provide Businessowners Liability Coverage through Policy Form BPM P 2 (12/07).  *See* Ex. 1 at 2015 POLICY 052.

4

17.     The insuring agreement for Coverage A.1 – Business Liability provides, in

pertinent part, as follows:

> **A. Coverages**
>
> > **1. Business Liability**
> >
> > > a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury", to which this insurance does not apply. We may at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:
> > >
> > > (1) The amount we will pay for damages is limited as described in Paragraph **D.** – Liability And Medical Expenses Limits Of Insurance in Section **II** – Liability; and
> > >
> > > (2) Our right and duty to defend end when we have used up the applicable Limit of Insurance in the payment of judgments or settlements or medical expenses.
> > >
> > > No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Paragraph **f.** Coverage Extension – Supplementary Payments.

*See id.*

18.     The Policies' liability coverage further provides that:

> > b. This insurance applies:
> >
> > > (1) To "bodily injury" and "property damage" only if:

5

(a) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(b) The "bodily injury" or "property damage" occurs during the policy period; and

(c) Prior to the policy period, no insured listed under Paragraph **C.1.** Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known before the policy period.

(2) To "personal and advertising injury" caused by an offense arising out of your business, but only if the offense was committed in the "coverage territory" during the policy period.

*See id.*

19.     The Policies further provide that:

c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **C.1.** Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of "bodily injury" or "property damage" after the end of the policy period.

d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **C.1.** Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

> (1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;
>
> (2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or
>
> (3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

*See id.* at 2015 POLICY 052-053.

20.     The Policies define "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."   *See id.* at 2015 POLICY 065.

21.     The Policies define "Property Damage," in relevant part, as follows:

> 17. "Property damage" means:
>
> a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
>
> b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

*See id.* at 2015 POLICY 066.

22.     The Policies exclude coverage for "Contractual Liability," such that there is no coverage under the Policies for:

b. **Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

*See id.* at 2015 POLICY 054.

23.    The Policies define "Insured Contract," in pertinent part, as follows:

f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization, provided the "bodily injury" or "property damage" is caused, in whole or in part, by you or by those acting on your behalf. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph f. does not include that part of any contract or agreement:

(1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

(2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

   (a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

   (b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

(3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

*See id.* at 2015 POLICY 113.

24.  The Policies also exclude coverage for damage to certain classes of property, such that there is no coverage under the Policies for "property damage" to:

(5) That particular part of real property on which you or any contractor or subcontractor working directly or indirectly on your behalf is performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

\*       \*       \*

9

> Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.
>
> Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

*See id.* at 2015 POLICY 057-058.

25.     The Policies define "products-completed operations hazard," in pertinent part, as follows:

> **16.** "Products-completed operations hazard":
>
>    **a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:
>
>       **(1)** Products that are still in your physical possession; or
>
>       **(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:
>
>         **(a)** When all of the work called for in your contract has been completed.
>
>         **(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.
>
>         **(c)** When that part of the work done at the job site has been put to its intended use by any other person or organization other than another contractor or subcontractor working on the same project.
>
>         Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.
>
>       The "bodily injury" or "property damage" must occur away from premises you own or rent, unless your business includes the selling, handling or distribution of "your product" for consumption on premises you own or rent.
>
>    **b.** Does not include "bodily injury" or "property damage" arising out of:
>
>       **(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured; or
>
>       **(2)** The existence of tools, uninstalled equipment or abandoned or unused materials.

10

*See id.* at 2015 POLICY 065-066.

      26.    The Policies define "your work" and "your product" as follows:

> 21. "Your product":
>
>   a. Means:
>
>     (1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:
>
>       (a) You;
>
>       (b) Others trading under your name; or
>
>       (c) A person or organization whose business or assets you have acquired; and
>
>     (2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.
>
>   b. Includes:
>
>     (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and
>
>     (2) The providing of or failure to provide warnings or instructions.
>
>   c. Does not include vending machines or other property rented to or located for the use of others but not sold.
>
> 22. "Your work":
>
>   a. Means:
>
>     (1) Work or operations performed by you or on your behalf; and
>
>     (2) Materials, parts or equipment furnished in connection with such work or operations.
>
>   b. Includes:
>
>     (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and
>
>     (2) The providing of or failure to provide warnings or instructions.

*See id.* at 2015 POLICY 066-067.

      27.    The Policies also exclude coverage for "property damage" to "your product" and "your work," such that there is no coverage under the Policies for:

11

l. **Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

m. **Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

*See id.* at 2015 POLICY 058.

28.    The Policies also exclude coverage for property damage to "impaired property,"

such that there is no coverage for:

n. **Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

*See id.*

29.    The Policies define the term "impaired property" as follows:

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

b. You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

(1) The repair, replacement, adjustment or removal of "your product" or "your work"; or

(2) Your fulfilling the terms of the contract or agreement.

*See id.* at 2015 POLICY 064.

30.     The Policies also contain an exclusion for liability arising from "bodily injury" or "property damage" that is caused by fungi or bacteria, such that there is no coverage for:

The following provisions are added to **Section II — Liability:**

A. The following exclusion is added to Paragraph **B.1., Exclusions – Applicable To Business Liability Coverage:**

t. **Fungi Or Bacteria**

(1) "Bodily injury", "property damage" or "personal and advertising injury" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

(2) Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

13

*See id.* at 2015 POLICY 112.

31.     The Fungi or Bacteria Exclusion defines "fungi" as "any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or by-products produced or released by fungi." *Id.*

32.     The Policies also contain an exclusion for "Exterior Insulation and Finish Systems," which provides that there will be no coverage for:

**Section II – Liability** is amended as follows:

A.  This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of, caused by, or attributable to, whether in whole or in part, the following:

1.  The design, manufacture, construction, fabrication, preparation, distribution and sale, installation, application, maintenance or repair, including remodeling, service, correction or replacement, of any "exterior insulation and finish system" or any part thereof, or any substantially similar system or any part thereof, including the application or use of conditioners, primers, accessories, flashings, coatings, caulking or sealants in connection with such a system; or

2.  "Your product" or "your work" with respect to any exterior component, fixture or feature of any structure if an "exterior insulation and finish system", or any substantially similar system, is used on the part of that structure containing that component, fixture or feature.

*See id.* at 2015 POLICY 090.

33.     The Policies define the term "Exterior insulation and insulation system" as follows:

> B. The following definition is added to the **Definitions** Section:
>
> "Exterior insulation and finish system" means a non-load bearing exterior cladding or finish system, and all component parts therein, used on any part of any structure, and consisting of:
>
> 1. A rigid or semi-rigid insulation board made of expanded polystyrene and other materials;
>
> 2. The adhesive and/or mechanical fasteners used to attach the insulation board to the substrate;
>
> 3. A reinforced or unreinforced base coat;
>
> 4. A finish coat providing surface texture to which color may be added; and
>
> 5. Any flashing, caulking or sealant used with the system for any purpose.

*See id.*

34.     The Policies also contain a provision permitting Main Street to seek reimbursement from its insured for defense costs it expends on behalf of an insured in the event it is determined that none of the claims in the underlying action are covered:

> The following is added to **Section II – Liability** Paragraph **A. Coverages:**
>
> If we initially defend an insured or pay for an insured's defense but later determine that none of the claims, for which we provided a defense or defense costs, are covered under this insurance, we have the right to reimbursement for the defense costs we have incurred.
>
> The right to reimbursement under this provision will only apply to the costs we have incurred after we notify you in writing that there may not be coverage and that we are reserving our rights to terminate the defense or the payment of defense costs and to seek reimbursement for defense costs.

*Id.* at 2015 POLICY 114.

35.     The Policies contain coverage for "Additional Insureds," which provides as follows:

15

**A. Additional Insureds**

Each of the following is added to Paragraph **C. Who Is An Insured** of BPM P 2 — **Section II — Liability** but only as specifically described by the following:

1. Any person(s) or organization(s) for whom you are performing operations is also an additional insured, when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability for "bodily injury", "property damage", "personal and advertising injury" caused in whole or part, by:

   **a.** Your acts or omissions; or

   **b.** The acts or omissions of those acting on your behalf;

   In the performance of your ongoing operations or "your work" included within the "products-completed operations" hazard for the additional insured at the location designated and described in the written contract or agreement.

*See id.* at 2015 POLICY 088.

36.     According to the Policies, the coverage for such "Additional Insureds" will be primary in the following circumstances:

**C.** The following is added to Paragraph **H. Other Insurance** of BPM P 3 — **Section III - Common Policy Conditions:**

Primary Additional Insured — If a written contract or agreement or permit requires this insurance to be primary for any person or organization with whom you agree to include in paragraph **C. Who Is An Insured** of BPM P 2 — **Section II — Liability**, this Other Insurance provision is applicable. This insurance is primary. This insurance is also non-contributory which means we will not seek contribution from other insurance available to the person or organization with whom you agree to include in **Who Is An Insured.**

*See id.* at 2015 POLICY 089.

## THE UNDERLYING ARBITRATION AND JOINDER ACTIONS

37.     Main Street hereby restates and incorporates by reference the averments of the preceding Paragraphs, as though same were set forth at length herein.

38.     On or about September 4, 2018, five homeowners—Galarneau, Egan, Gill, Hanway, and Hoff—who each owned properties and homes in the Brick House Farms development in Newtown Square, Pennsylvania, commenced arbitration proceedings with the American Arbitration Association ("AAA") against Glenn White (the "Galarneau Claims"). Copies of the relevant AAA Demands are attached hereto as Exhibit "8."

39.     According to the AAA Demands, Glenn White was the general contractor for the project to build the homes at the Brick House Farms development (the "Project"). *Id*.

40.      The plaintiffs in the Galarneau Claims alleged that they purchased their respective properties—1014 Brick House Farm Lane (Galarneau); 1028 Brick House Farm Lane (Gill); 1022 Brick House Farm Lane (Hoff); 1030 Brick House Farm Lane (Hanway); and 1016 Brick House Farm Lane (Egan)—between 2005 and 2007 "as a direct result of [Glenn White's] marketing materials and other representations related to the quality of the Property." *Id*.

41.     Each of the plaintiffs in the Galarneau Claims alleged that he/she subsequently discovered moisture penetration that was the result of faulty workmanship and materials, and that this moisture penetration caused property damage to his/her property. *Id*.

42.     Each of the plaintiffs in the Galarneau Claims alleged claims for Breach of Contract; Violation of the Pennsylvania Real Estate Disclosure Law, 68 P.S. § 7308, *et seq*.; Breach of Implied Warranties of Habitability and Workmanlike Construction; Negligence; Misrepresentation; and Violation of the Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1, *et seq*. *Id*.

43.     Thereafter, in connection with the Galarneau Claims, Glenn White filed a Joinder Arbitration Demand that named Connolly Contractors as a respondent (the "Joinder Action"). A copy of the Joinder Demand is attached hereto as Exhibit "9."

44.     The Joinder Action alleged that Connolly Contractors was the successor or assignee of Connolly Stucco & Plastering, Inc. ("Connolly Stucco").  *Id.*

45.     Connolly Stucco was the company that did the work on the Project pursuant to a subcontract with Glenn White.  *Id.*

46.     Connolly Stucco ceased to exist in 2014.

47.     Connolly Contractors, which began operations in 2014, is not the corporate successor-in-interest of Connolly Stucco.

48.     According to the Joinder Action, the Galarneau Claims arose from defective construction and/or installation of stucco, stone, roofing, windows, doors, decks, electrical systems, HVAC, heating, and plumbing systems, all of which allegedly caused damage to the property of the plaintiffs in the Galarneau Claims.  *Id.*

49.     The Joinder Action further alleges that on or about July 30, 2005, Connolly Stucco entered into a subcontract with Glenn White.  *Id.*

50.     Pursuant to this subcontract, which is attached hereto as Exhibit "10," Connolly Stucco agreed to undertake certain obligations relating to its work on the Project.  *See* Ex. 10.

51.     Among these obligations was the requirement that Connolly Stucco purchase general liability insurance that had liability limits of at least $500,000 per occurrence/$1,000,000 aggregate.  *Id.*

52.     The July 30, 2005 subcontract did not require that Glenn White be named as an additional insured.  *Id.*

53.     The July 30, 2005 subcontract also required that Connolly Stucco indemnify and hold Glenn White harmless in the event of loss or damage arising out of Connolly Stucco's work.  *Id.*

18

54.     On or about February 26, 2007, Connolly Stucco and Glenn White entered into a second subcontract. A copy of the February 26, 2007 subcontract is attached hereto as Exhibit "11."

55.     The February 26, 2007 subcontract had the same insurance and indemnity requirements as did the July 30, 2005 subcontract. *Id.*

56.     According to the Joinder Action, Connolly Stucco was to perform the installation of stucco systems at the Project pursuant to these subcontracts. *Id.*

57.     As averred in the Joinder Action, Connolly Stucco's work was defective and caused the property damage claimed by the respective plaintiffs in the Galarneau Claims. *Id.*

58.     Glenn White's Joinder Action asserts three claims against Connolly Contractors and the other subcontractors:

>    (a)     The "First Count," which is entitled "Contribution," seeks contribution from Connolly Contractors for any award in favor of the plaintiffs and against Glenn White, as Connolly Contractors—like all of the other subcontractors—is alleged to be jointly and severally liable for the property damage caused by its faulty workmanship;

>    (b)     The "Second Count," which is entitled "Common Law Indemnification," seeks indemnification from Connolly Contractors and the other subcontractors for any award against Glenn White and in favor of the plaintiffs, as Connolly Contractors and the other subcontractors were primarily and actively negligent; and

>    (c)     The "Third Count," which is entitled "Contractual Defense and Indemnification," alleges that Connolly Contractors and the other subcontractors are obligated to defend and indemnify Glenn White under the terms of their respective subcontracts, and it seeks indemnity for any award against it and in favor of the plaintiffs.

*Id.*

59.     On or about August 9, 2019, Main Street received notice of a separate claim asserted against Glenn White by another of the homeowners—Timothy and Paula Campbell—who owned 1011 Brick House Farm Lane at the Brickhouse Farms development (the "Campbell

19

Claim"). A copy of the tender and notice of the Campbell Claim is attached hereto as Exhibit "12."

60. By letter dated August 9, 2019, Glenn White tendered the Campbell Claim to Main Street, and it demanded a defense and indemnity coverage under the Policies pursuant to its contract with Connolly Stucco. *See id*.

61. The Campbell Claim alleges that the work of Glenn White and its subcontractors—which would include Connolly Stucco—was defective and resulted in moisture penetration and water infiltration that caused property damage to the Campbell's property. *Id*.

62. On or about August 13, 2019, Main Street received notice of a AAA arbitration demand made by another of the Brick House Farms homeowners—Robert and Barbara Plick, who owned 1013 Brick House Farm Lane—against Glenn White (the "Plick Claim"). Copies of the relevant AAA demand documents relating to the Plick Claim are attached hereto as Exhibit "13."

63. The Plick Claim alleges that the work of Glenn White and its subcontractors— which would include Connolly Stucco—was defective and resulted in moisture penetration and water infiltration that caused property damage to the Plicks' property. *Id*.

64. Since receiving notice of the Plick Claim and the Campbell Claim, Main Street has been advised that the following homeowners at the Brick House Farms development have also filed AAA arbitration claims against Glenn White (the "Subsequent Claims"):

> (a)    Jonathan and Hope Sturz (1007 Brick House Farm Lane);
>
> (b)    Todd and Christine Netter (1021 Brick House Farm Lane);
>
> (c)    Joseph and Gosia Zahm (1003 Brick House Farm Lane);
>
> (d)    Rydysky (1010 Brick House Farm Lane);
>
> (e)    Woods (1017 Brick House Farm Lane);

(f)  Marlyse Fant and Derek Boyko (1009 Brick House Farm Lane);

(g)  Tushar and Danna Shah (1020 Brick House Farm Lane);

(h)  Michael and Brett Holloway (1025 Brick House Farm Lane);

(i)  Robert Johnstone (1026 Brick House Farm Lane);

(j)  Senthil and Nirmala Nathan (1018 Brick House Farm Lane);

(k)  David and Amy Woods (1017 Brick House Farm Lane);

(l)  Patrick and Kathleen Kelly (1024 Brick House Farm Lane);

(m)  Stuart and Marlene Nathans (1027 Brick House Farm Lane);

(n)  Christopher and Deborah Karlak (1038 Brick House Farm Lane);

(o)  Ralph and Nichol Roam (1023 Brick House Farm Lane); and

(p)  Joseph and Jamie O'Connell (1032 Brick House Farm Lane).

65.  Upon information and belief, Glenn White has filed joinder AAA arbitration demands against Connolly Contractors in connection with some or all of the Subsequent Claims (the "Subsequent Joinder Actions"). *See* Exhibit "14."

## THE CLAIMS FOR COVERAGE

66.  Main Street hereby restates and incorporates by reference the averments of the preceding Paragraphs, as though same were set forth at length herein.

67.  Subsequent to the filing of the Joinder Action, Connolly Contractors tendered the Joinder Action to Main Street, and sought a defense and indemnity in the Joinder Action under the Policies.

68.  Main Street agreed to assume the defense of Connolly Contractors in the Joinder Action, but did so subject to a reservation of its rights.  Copies of the reservation of rights letters sent to Connolly are attached hereto as Exhibit "15."

21

69.     In its reservation of rights letters, Main Street alerted Connolly Contractors to the fact that several exclusions—such as the "Contractual Liability," "Damage To Property," "Damage To Your Work," "Damage To Impaired Property Or Property Not Physically Injured," and "Recall of Products, Work or Impaired Property" exclusions—might preclude coverage for the claims against Connolly Contractors in the Joinder Action. *Id.*

70.      The letters further indicated that the exclusions for "Fungi Or Bacteria" and "Exterior Insulation And Finish Systems" might apply to the claims in the Joinder Action. *Id.*

71.     Main Street's letters also alerted Connolly Contractors to the fact that in the event the claims against Connolly Contractors in the Joinder Action were not covered under the Policies, the Policies permitted Main Street to seek reimbursement for the attorneys' fees it incurred in the defense of Connolly Contractors. *Id.*

72.     Main Street has continued to investigate and defend Connolly Contractors in connection with Campbell Claim, the Plick Claim, and the Subsequent Claims.

73.     In connection with the Galarneau Claims, Glenn White sought coverage from Main Street as an additional insured.

74.     Main Street denied a duty to defend of indemnify Glenn White in connection with the Galarneau Claims.

### COUNT I
*Against Connolly Contractors*
**For Declaratory Judgment That Main Street Has No Duty To Defend Connolly Contractors In Connection With The Joinder Action, The Subsequent Joinder Actions, The Galarneau Claims, The Campbell Claim, The Plick Claim, Or The Subsequent Claims**

75.     Main Street hereby restates and incorporates by reference the averments of the preceding Paragraphs, as though same were set forth at length herein.

76.     For the reasons set forth herein, an actual, justiciable controversy exists between the parties concerning their respective rights and obligations, if any, under the Policies with respect to the Joinder Action, the Subsequent Joinder Actions, the Galarneau Claims, the Campbell Claim, the Plick Claim, and/or the Subsequent Claims.

77.     Specifically, there is a dispute between Main Street and Connolly Contractors regarding Main Street's obligation, if any, to provide a defense for Connolly Contractors in connection with the allegations against it in the Joinder Action, the Subsequent Joinder Actions, the Galarneau Claims, the Campbell Claim, the Plick Claim, and/or the Subsequent Claims.

78.     Upon information and belief, Connolly Contractors believes that it is entitled to a defense from Main Street for the claims asserted against it in the Joinder Action, the Subsequent Joinder Actions, the Galarneau Claims, the Campbell Claim, the Plick Claim, and/or the Subsequent Claims.

79.     Main Street disputes that the Policies obligate it to defend Connolly Contractors in the Joinder Action or Subsequent Joinder Actions, or in connection with the Galarneau Claims, the Campbell Claim, the Plick Claim, and/or the Subsequent Claims.

80.     Main Street seeks a declaration that it has no duty to defend Connolly Contractors in the Joinder Action or the Subsequent Joinder Actions, or in connection with the Galarneau Claims, the Campbell Claim, the Plick Claim, and/or the Subsequent Claims; and that Main Street may therefore withdraw the defense of Connolly Contractors that Main Street is currently providing—under reservation of rights—in the litigation regarding those claims.

81.     Pursuant to 28 U.S.C. § 2201, Main Street is entitled to a judicial determination concerning the scope and nature of its rights and other legal relations and obligations, if any,

under the Policies with respect to the Joinder Action, the Subsequent Joinder Actions, the Galarneau Claims, the Campbell Claim, the Plick Claim, and/or the Subsequent Claims.

82.     In order to trigger coverage under the Policies, there must be a covered "occurrence."  *See* Ex. 1 at 2015 POLICY 052-053.

83.     The Policies define the term "occurrence" to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  *Id.* at 2015 POLICY 065.

84.     Under Pennsylvania law, claims arising out of faulty workmanship are not an "occurrence," and therefore are not covered under a policy of general liability insurance.  *See, e.g., Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 908 A.2d 888 (Pa. 2006); *see also Specialty Surfaces Int'l, Inc. v. Continental Cas. Co.*, 609 F.3d 223 (3d Cir. 2010); *Miller's Capital Ins. Co. v. Gambone*, 941 A.2d 706 (Pa. Super. 2007).

85.     Similarly, allegations of breach of contract or breach of warranty do not set forth a covered "occurrence" under Pennsylvania law.  *See, e.g., Erie Ins. Exchange v. Abbott Furnace Co.*, 972 A.2d 1232 (Pa. Super. 2009).

86.     The allegations against Connolly Contractors in the Joinder Action, the Subsequent Joinder Actions, the Galarneau Claims, the Campbell Claim, the Plick Claim, and the Subsequent Claims all arise from alleged faulty workmanship by Connolly Contractors and/or from water intrusion as a result of said faulty workmanship.

87.     The allegations against Connolly Contractors in the Joinder Action, the Subsequent Joinder Actions, the Galarneau Claims, the Campbell Claim, the Plick Claim, and the Subsequent Claims all involve claims that Connolly Contractors failed to adequately perform the work required of it under its contract with Glenn White, and that this inadequately-performed

24

work resulted in damage to the item(s) that Connolly Contractors constructed or participated in constructing.

88.     The allegations against Connolly Contractors in the Joinder Action, the Subsequent Joinder Actions, the Galarneau Claims, the Campbell Claim, the Plick Claim, and the Subsequent Claims all involve claims that Connolly Contractors failed to satisfy the contractual expectations of Glenn White and/or the homeowners of the Brick House Farm development.

89.     Under Pennsylvania law, the Joinder Action, the Subsequent Joinder Actions, the Galarneau Claims, the Campbell Claim, the Plick Claim, and the Subsequent Claims do not allege a covered "occurrence" under the Policies, and there is therefore no coverage under the Policies for Connolly Contractors with respect to the Joinder Action, the Subsequent Joinder Actions, the Galarneau Claims, the Campbell Claim, the Plick Claim, and the Subsequent Claims.

90.     Upon information and belief, the damages alleged in the Joinder Action, the Subsequent Joinder Actions, the Galarneau Claims, the Campbell Claim, the Plick Claim, and the Subsequent Claims arise from "property damage" caused by mold, bacteria, or fungi.

91.     Pursuant to the Fungi or Bacteria Exclusion, the Policies therefore do not cover the claims against Connolly Contractors in the Joinder Action, the Subsequent Joinder Actions, the Galarneau Claims, the Campbell Claim, the Plick Claim, and the Subsequent Claims.

92.     Upon information and belief, the Joinder Action, the Subsequent Joinder Actions, the Galarneau Claims, the Campbell Claim, the Plick Claim, and the Subsequent Claims seek damages pursuant to a contractual agreement to which Connolly Contractors was a party.

93.     Pursuant to Exclusion b., which excludes coverage for "Contractual Liability," the Policies do not cover the claims against Connolly Contractors in the Joinder Action, the Subsequent Joinder Actions, the Galarneau Claims, the Campbell Claim, the Plick Claim, and the Subsequent Claims.

94.     Pursuant to Exclusion k., the Policies do not cover the claims against Connolly Contractors in the Joinder Action, the Subsequent Joinder Actions, the Galarneau Claims, the Campbell Claim, the Plick Claim, and the Subsequent Claims because the "property damage" alleged therein was to the particular part of real property on which Connolly Contractors or any contractor or subcontractor working directly or indirectly on its behalf was performing operations and arose out of those operations.

95.     Pursuant to Exclusions l. and m., the Policies do not cover the claims against Connolly Contractors in the Joinder Action, the Subsequent Joinder Actions, the Galarneau Claims, the Campbell Claim, the Plick Claim, and the Subsequent Claims because the "property damage" alleged therein was to Connolly Contractors' own  "work" and/or "product," as those terms are used in the Policies.

96.     Pursuant to Exclusion n., the Policies do not cover the claims against Connolly Contractors in the Joinder Action, the Subsequent Joinder Actions, the Galarneau Claims, the Campbell Claim, the Plick Claim, and the Subsequent Claims because the "property damage" alleged therein was to "impaired property" or property that has not been physically injured, and arose out of a defect, deficiency, inadequacy or dangerous condition in Connolly Contractors' own "product" and/or "work," and/or arose out of a delay or failure by Connolly Contractors or anyone acting on its behalf to perform a contract or agreement in accordance with its terms.

97.     The Policies do not cover the claims against Connolly Contractors in the Joinder Action, the Subsequent Joinder Actions, the Galarneau Claims, the Campbell Claim, the Plick Claim, and the Subsequent Claims because the alleged conduct and/or property damage giving rise to the litigation and/or claims occurred outside the effective period of the Policies.

98.     Under the terms, provisions, definitions, exclusions, conditions, and limitations of the Policies, Main Street therefore has no duty to defend Connolly Contractors in connection with the Joinder Action, the Subsequent Joinder Actions, the Galarneau Claims, the Campbell Claim, the Plick Claim, and the Subsequent Claims.

99.     Accordingly, Main Street is entitled to a declaration pursuant to 28 U.S.C. § 2201 that: (1) Main Street has no duty to defend Connolly Contractors in the Joinder Action or the Subsequent Joinder Actions; (2) Main Street has no coverage obligation to Connolly Contractors in connection with the Galarneau Claims, the Campbell Claim, the Plick Claim, and the Subsequent Claims, including any claims asserted by Glenn White in relation thereto; (3) Main Street may withdraw the defense it is currently providing to Connolly Contractors in the Joinder Action, the Subsequent Joinder Actions, and any other litigation related to the Brick House Farms development; and (4) because there is no coverage for the claims against Connolly Contractors, Main Street is entitled to reimbursement of the defense costs it has expended in defending Connolly Contractors in the Joinder Action, the Subsequent Joinder Actions, and/or any other litigation against Connolly Contractors related to the Brick House Farms development.

WHEREFORE, Plaintiff Main Street America Assurance Company respectfully requests that the Court enter an Order:

(a)     Declaring that Main Street has no duty to defend Connolly Contractors in the Joinder Action or the Subsequent Joinder Actions;

27

(b)    Declaring that Main Street has no duty to defend Connolly Contractors in connection with the Galarneau Claims, the Campbell Claim, the Plick Claim, and/or the Subsequent Claims;

(c)    Declaring that Main Street may withdraw from the defense of Connolly Contractors in the Joinder Action, the Subsequent Joinder Actions, and any other litigation related to the Brick House Farms development;

(d)    Awarding Main Street reimbursement of the defense costs it has expended in defending Connolly Contractors in the Joinder Action, the Subsequent Joinder Actions, and any other litigation related to the Brick House Farms development; and

(e)    Granting Main Street such other and further relief as may be necessary and appropriate under the circumstances.

## COUNT II
### *Against Connolly Contractors*
**For Declaratory Judgment That Main Street Has No Duty To Indemnify Connolly Contractors In Connection With The Joinder Action, The Subsequent Joinder Actions, The Galarneau Claims, The Campbell Claim, The Plick Claim, Or The Subsequent Claims**

100.    Main Street hereby restates and incorporates by reference the averments of the preceding Paragraphs, as though same were set forth at length herein.

101.    For the reasons set forth above, there are no claims asserted against Connolly Contractors in the Joinder Action and/or the Subsequent Joinder Actions that are potentially covered under the Policies.

102.    For the same reason, there is no potential coverage under the Policies for the damages alleged in connection with the Galarneau Claims, the Campbell Claim, the Plick Claim, and/or the Subsequent Claims.

103.    Under the terms, provisions, definitions, exclusions, conditions, and limitations of the Policies, Main Street therefore has no duty to indemnify Connolly Contractors for any of the claims in the Joinder Action, the Subsequent Joinder Actions, the Galarneau Claims, the Campbell Claim, the Plick Claim, and/or the Subsequent Claims, including any cross-claims; and/or in connection with any judgment entered against Connolly Contractors or for any

28

settlement in the Joinder Action, the Subsequent Joinder Actions, the Galarneau Claims, the Campbell Claim, the Plick Claim, and the Subsequent Claims.

104.     Accordingly, Main Street is entitled to a declaration pursuant to 28 U.S.C. § 2201 that it has no duty to indemnify Connolly Contractors in connection with any judgment or settlement in the Joinder Action, the Subsequent Joinder Actions, the Galarneau Claims, the Campbell Claim, the Plick Claim, and the Subsequent Claims.

WHEREFORE, Plaintiff Main Street America Assurance Company respectfully requests that the Court enter an Order:

(a)     Declaring that Main Street has no duty to indemnify Connolly Contractors for any judgment or settlement in the Joinder Action, the Subsequent Joinder Actions, the Galarneau Claims, the Campbell Claim, the Plick Claim, and the Subsequent Claims; and

(b)     Granting Main Street such other and further relief as may be necessary and appropriate under the circumstances.

### COUNT III
### *Against Glenn White*
**For Declaratory Judgment That Main Street Has No Duty To Defend Glenn White As An Additional Insured In Connection With The Galarneau Claims, The Campbell Claim, The Plick Claim, Or The Subsequent Claims**

105.     Main Street hereby restates and incorporates by reference the averments of the preceding Paragraphs, as though same were set forth at length herein.

106.     For the reasons set forth herein, an actual, justiciable controversy exists between the parties concerning their respective rights and obligations, if any, under the Policies with respect to the Galarneau Claims, the Campbell Claim, the Plick Claim, and/or the Subsequent Claims.

107.     Specifically, there is a dispute between Main Street and Glenn White regarding Main Street's obligation, if any, to provide a defense for Glenn White as an additional insured

29

under the Policies in connection with the allegations against it in connection with the Galarneau Claims, the Campbell Claim, the Plick Claim, and/or the Subsequent Claims.

108.    Upon information and belief, Glenn White believes that it is entitled to a defense from Main Street for the claims asserted against it in connection with the Galarneau Claims, the Campbell Claim, the Plick Claim, and/or the Subsequent Claims.

109.    Main Street disputes that the Policies obligate it to defend Glenn White in connection with the Galarneau Claims, the Campbell Claim, the Plick Claim, and/or the Subsequent Claims.

110.    Main Street therefore seeks a declaration that it has no duty to defend Glenn White in connection with the Galarneau Claims, the Campbell Claim, the Plick Claim, and/or the Subsequent Claims.

111.    Pursuant to 28 U.S.C. § 2201, Main Street is entitled to a judicial determination concerning the scope and nature of its rights and other legal relations and obligations, if any, under the Policies with respect to the Galarneau Claims, the Campbell Claim, the Plick Claim, and/or the Subsequent Claims.

112.    Glenn White does not qualify as an additional insured under the terms of the Policies with respect to the Galarneau Claims, the Campbell Claim, the Plick Claim, and/or the Subsequent Claims.

113.    In order to trigger coverage under the Policies, there must be a covered "occurrence." *See* Ex. 1 at 2015 POLICY 052-053.

114.    The Policies define the term "occurrence" to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id*. at 2015 POLICY 065.

115.   Under Pennsylvania law, claims arising out of faulty workmanship are not an "occurrence," and therefore are not covered under a policy of general liability insurance.  *See, e.g., Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 908 A.2d 888 (Pa. 2006); *see also Specialty Surfaces Int'l, Inc. v. Continental Cas. Co.*, 609 F.3d 223 (3d Cir. 2010); *Miller's Capital Ins. Co. v. Gambone*, 941 A.2d 706 (Pa. Super. 2007).

116.   Similarly, allegations of breach of contract or breach of warranty do not set forth a covered "occurrence" under Pennsylvania law.  *See, e.g., Erie Ins. Exchange v. Abbott Furnace Co.*, 972 A.2d 1232 (Pa. Super. 2009).

117.   The allegations against Glenn White in the Galarneau Claims, the Campbell Claim, the Plick Claim, and the Subsequent Claims all arise from alleged faulty workmanship by Glenn White and/or its subcontractors; and/or from water intrusion as a result of said faulty workmanship.

118.   The allegations against Glenn White in the Galarneau Claims, the Campbell Claim, the Plick Claim, and the Subsequent Claims all involve claims that Glenn White and those acting on its behalf (including Connolly Contractors) failed to adequately perform the work required of it in connection with the Brick House Farms project, and that this inadequately-performed work resulted in damage to the item(s) that Glenn White constructed or participated in constructing.

119.   The allegations against Glenn White in the Galarneau Claims, the Campbell Claim, the Plick Claim, and the Subsequent Claims all involve claims that Glenn White and those acting on its behalf (including Connolly Contractors) failed to satisfy the contractual expectations of the homeowner plaintiffs.

120.    Under Pennsylvania law, the Galarneau Claims, the Campbell Claim, the Plick Claim, and the Subsequent Claims do not allege a covered "occurrence" under the Policies, and there is therefore no coverage under the Policies for Glenn White with respect to the Galarneau Claims, the Campbell Claim, the Plick Claim, and the Subsequent Claims.

121.    Upon information and belief, the damages alleged in the Galarneau Claims, the Campbell Claim, the Plick Claim, and the Subsequent Claims arise from "property damage" caused by mold, bacteria, or fungi.

122.    Pursuant to the Fungi or Bacteria Exclusion, the Policies therefore do not cover the claims against Glenn White in the Galarneau Claims, the Campbell Claim, the Plick Claim, and the Subsequent Claims.

123.    Upon information and belief, the Galarneau Claims, the Campbell Claim, the Plick Claim, and the Subsequent Claims seek damages pursuant to a contractual agreement to which Glenn White was a party.

124.    Pursuant to Exclusion b., which excludes coverage for "Contractual Liability," the Policies do not cover the claims against Glenn White in the Galarneau Claims, the Campbell Claim, the Plick Claim, and the Subsequent Claims.

125.    Pursuant to Exclusion k., the Policies do not cover the claims against Glenn White in the Galarneau Claims, the Campbell Claim, the Plick Claim, and the Subsequent Claims because the "property damage" alleged therein was to the particular part of real property on which Glenn White, Connolly Contractors, or any contractor or subcontractor working directly or indirectly on their behalf was performing operations and arose out of those operations.

126.    Pursuant to Exclusions l. and m., the Policies do not cover the claims against Glenn White in the Galarneau Claims, the Campbell Claim, the Plick Claim, and the Subsequent

Claims because the "property damage" alleged therein was to Glenn White's and/or Connolly Contractors' own "work" and/or "product," as those terms are used in the Policies.

127.    Pursuant to Exclusion n., the Policies do not cover the claims against Glenn White in the Galarneau Claims, the Campbell Claim, the Plick Claim, and the Subsequent Claims because the "property damage" alleged therein was to "impaired property" or property that has not been physically injured, and arose out of a defect, deficiency, inadequacy or dangerous condition in Glenn White's and/or Connolly Contractors' own "product" and/or "work," and/or arose out of a delay or failure by Glenn White and/or Connolly Contractors or anyone acting on their behalf to perform a contract or agreement in accordance with its terms.

128.    The Policies do not cover the claims against Glenn White in the Galarneau Claims, the Campbell Claim, the Plick Claim, and the Subsequent Claims because the alleged conduct and/or property damage giving rise to the litigation and/or claims occurred outside the effective period of the Policies.

129.    Under the terms, provisions, definitions, exclusions, conditions, and limitations of the Policies, Main Street therefore has no duty to defend Glenn White in connection with the Galarneau Claims, the Campbell Claim, the Plick Claim, and the Subsequent Claims..

130.    Accordingly, Main Street is entitled to a declaration pursuant to 28 U.S.C. § 2201 that Main Street has no duty to defend Glenn White in connection with claims against it in the Galarneau Claims, the Campbell Claim, the Plick Claim, and the Subsequent Claims.

WHEREFORE, Plaintiff Main Street America Assurance Company respectfully requests that the Court enter an Order:

> (a)    Declaring that Main Street has no duty to defend Glenn White in connection with claims against it in the Galarneau Claims, the Campbell Claim, the Plick Claim, and the Subsequent Claims, and/or in relation to any litigation relating to those claims; and

33

(b)     Granting Main Street such other and further relief as may be necessary and appropriate under the circumstances.

<u>**COUNT IV**</u>
*Against Glenn White*
**For Declaratory Judgment That Main Street Has No Duty To Indemnify Glenn White In Connection With The Galarneau Claims, The Campbell Claim, The Plick Claim, Or The Subsequent Claims**

131.    Main Street hereby restates and incorporates by reference the averments of the preceding Paragraphs, as though same were set forth at length herein.

132.    For the reasons set forth above, there is no potential coverage under the Policies for the damages alleged against Glenn White in the Galarneau Claims, the Campbell Claim, the Plick Claim, and/or the Subsequent Claims.

133.    Under the terms, provisions, definitions, exclusions, conditions, and limitations of the Policies, Main Street therefore has no duty to indemnify Glenn White for any of the claims in the Galarneau Claims, the Campbell Claim, the Plick Claim, and/or the Subsequent Claims, including any cross-claims; and/or in connection with any judgment entered against Glenn White or for any settlement in the Galarneau Claims, the Campbell Claim, the Plick Claim, and the Subsequent Claims.

134.    Accordingly, Main Street is entitled to a declaration pursuant to 28 U.S.C. § 2201 that it has no duty to indemnify Glenn White in connection with any judgment or settlement in the Galarneau Claims, the Campbell Claim, the Plick Claim, and the Subsequent Claims.

WHEREFORE, Plaintiff Main Street America Assurance Company respectfully requests that the Court enter an Order:

(a)     Declaring that Main Street has no duty to indemnify Glenn White for any judgment or settlement in the Galarneau Claims, the Campbell Claim, the Plick Claim, and the Subsequent Claims; and

(b)     Granting Main Street such other and further relief as may be necessary and appropriate under the circumstances.

Dated:  June 8, 2020                          **POST & SCHELL, P.C.**


                              By:    */s/  Bryan M. Shay*
                                     BRYAN M. SHAY, ESQ.
                                     PA ID NO. 205953
                                     Four Penn Center, 13th Floor
                                     1600 John F Kennedy Blvd.
                                     Philadelphia, PA  19103
                                     Phone:  215-587-1182
                                     Facsimile: 215-320-4876
                                     *Attorneys for Plaintiff Main Street America*
                                     *Assurance Company*

<u>**CERTIFICATE OF SERVICE**</u>

      I, Bryan M. Shay, hereby aver that on the date set forth below, I caused a true and correct copy of the foregoing <u>Complaint for Declaratory Judgment</u> to be filed with the Court.  Service of said Complaint was made on all parties in accordance with the applicable Rules of Civil Procedure.

Dated:  June 8, 2020                  **POST & SCHELL, P.C.**

                           By   */s/  **Bryan M. Shay***

                                 BRYAN M. SHAY, ESQ.
                                 PA ID NO. 205953
                                 Four Penn Center, 13th Floor
                                 1600 John F Kennedy Blvd.
                                 Philadelphia, PA  19103
                                 Phone:  215-587-1182
                                 Facsimile: 215-320-4876
                                 *Attorneys for Plaintiff Main Street America Assurance Company*