# EXHIBIT 15

 

July 30, 2019

***Sent via Regular Mail and Certified Mail – Return Receipt Requested***

Connolly Contractors, Inc.
1229 Valley Road
Glen Mills, PA 19342

<u>**Reservation of Rights**</u>

| RE: | **Claim No.:** | **MPU9531P-100001** |
|-----|----------------|---------------------|
| | **Policy No.:** | **MPU9531P** |
| | **Insured:** | **Connolly Contractors, Inc.** |
| | **Claimant:** | **Christine Egan, et al.** |
| | **Lawsuit:** | ***Egan, et al. v. Glenn M. White Builders, Inc. v. Connolly Contractors, Inc., et al.*** **(AAA No. 01-18-0003-3195)** |
| | <u>**Policy Period:**</u> | **8/24/2015 to 8/24/2017** |

Dear Connolly Contractors, Inc. ("You"):

Main Street America Assurance Company ("MSAA," "us," or "we") issued the above-referenced policy of Businessowners Insurance (the "Policy") to you. We previously received copies of the AAA arbitration demands filed by the above-referenced claimants, and your request that MSAA defend you in connection with those arbitration demands (the "Lawsuits"). Pursuant to our letter of March 15, 2019, MSAA is currently defending you in connection with the Lawsuits subject to a reservation of MSAA's rights under the Policy and applicable law. We are writing to provide you with an update regarding MSAA's position regarding your claim for coverage with respect to the Lawsuits. In doing so, MSAA hereby incorporates by reference the contents of all of its previous correspondence to you regarding this matter, including the referenced March 15, 2019 letter.

## I.    <u>SUMMARY OF MSAA'S COVERAGE DETERMINATION</u>

MSAA has carefully reviewed and evaluated the allegations of the Lawsuits and those documents obtained during MSAA's investigation of your claim. Based upon the information available to MSAA at this time, the Policy may not provide coverage, in whole or in part, for you regarding some or all of the claims asserted in the Lawsuits. **Notwithstanding this conclusion, MSAA will continue to provide a defense for you in connection with the Lawsuits, subject to a full and complete reservation of MSAA's rights and defenses under the Policy and under applicable law, as set forth herein**.

Please be advised that MSAA's defense of you in the Lawsuits pursuant and subject to the reservation of rights set forth herein is not—and shall not be deemed to constitute—an admission

Attention: Claims Mail
The Main Street America Group
P.O. Box 2002, Keene, NH 03431
ClaimsMail@msagroup.com

or acknowledgment that the Policy applies to the claims in the Lawsuits, or that MSAA has any obligation under the Policy as regards the claims in the Lawsuits—including, but not limited to,

any obligation to defend or indemnify you.  By defending you against the claims in the Lawsuits pursuant and subject to this reservation of rights, MSAA shall not be estopped from raising any defenses under the Policy or applicable law.

Pursuant to the Policy and this reservation of rights, MSAA will continue to retain the following counsel to defend you in the Lawsuits:

> **Jeffrey C. Sotland, Esq.**
> **MINTZER SAROWITZ ZERIS LEDVA & MEYERS, LLP**
> **Centre Square, West Tower**
> **1500 Market St.**
> **Suite 4100**
> **Philadelphia, PA 19102**
> **(215) 735-7200**
> **jsotland@defensecounsel.com**

Please note that although MSAA will continue to provide you with a defense in the Lawsuits, MSAA may not defend or indemnify you for any liability, settlement, judgment, or damages awarded in the Lawsuits that result from certain acts, conduct, or omissions that are not covered under the Policy.  In addition, MSAA may not provide coverage for any award of damages that exceeds the applicable Policy limits.  **You should therefore retain personal counsel to protect your interests and advise you with respect to these potentially uncovered claims and/or damages**.

**You have the option to accept or reject MSAA's offer to continue to defend you in the Lawsuits pursuant to the following reservation of rights.  If you wish to reject MSAA's offer of continued representation, please advise us in writing within 10 days.  Absent receipt of such notice, MSAA will assume that you consent to the continued defense being offered subject to this reservation of rights.**  In the event that you do not wish to accept MSAA's offer of a continued defense, you should immediately retain personal counsel to defend you in the Lawsuits, at your own expense.  Upon receipt of such notice, we will make arrangements to transfer the litigation file materials to your personal counsel.

Please be advised that nothing contained in this letter—including the recitation and discussion herein of specific Policy provisions—shall be considered a waiver of any of our rights under the Policy and/or applicable law.  MSAA continues to reserve all of its rights, duties, conditions, and defenses available under the Policy, including the right to supplement or modify this letter at a later date.  If MSAA learns of facts or other information indicating that the Policy does not apply to the claims against you, MSAA hereby reserves the right to—among other actions—deny application of the Policy and/or withdraw from the defense of the Lawsuits or any other further participation in this matter.

*Please note that this reservation of rights is based on the information MSAA has received to date and the information set forth in the Lawsuits.  If there is additional information that you would*

*like us to consider, or if there are any other persons to whom we should direct this correspondence, please let us know.  Otherwise, we will consider this adequate notice of MSAA's coverage position regarding the above-referenced claim.*

## II.      THE ALLEGATIONS IN THE LAWSUITS AND MSAA'S INVESTIGATION

*The information set forth below is based on the documents and information available to MSAA at this time, including the arbitration demands filed in the Lawsuits.  To the extent that you have received—or subsequently do receive—additional information or documents bearing on the claims against you, kindly provide that information or those documents for our review.*

The Lawsuits arise out of the construction and sale of several properties in the Brickhouse Farms development (the "Project").  Five homeowners—Egan, Gill, Hoff, Galarneau, and Hanway—filed American Arbitration Association ("AAA") Arbitration Demands on or about September 4, 2018.  Those Arbitration Demands were directed against Glenn M. White Builders, Inc. ("White"), which was the general contractor on the Project.  According to the Arbitration Demands, the claimants purchased the homes between 2005 and 2007 "as a direct result of [White's] marketing materials and other representations related to the quality of the Property." Each alleged that he/she subsequently discovered moisture penetration that was the result of faulty workmanship and materials, and that this moisture penetration caused property damage. Each claimant alleged claims for Breach of Contract; Violation of the Pennsylvania Real Estate Disclosure Law, 68 P.S. § 7308, et seq.; Breach of Implied Warranties of Habitability and Workmanlike Construction; Negligence; Misrepresentation; and Violation of the Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1, et seq.

Thereafter, White filed a Joinder Arbitration Demand, in which it named you as one of the respondents.  The Joinder Arbitration Demand alleged that you were the successor or assignee of Connolly Stucco & Plastering, Inc. ("Connolly Stucco").  It is our understanding that Connolly Stucco was the company that did the work on the Project, and that although it was owned and operated by your principal, it ceased to exist prior to the effective period of the Policy.  It is our further understanding that despite the allegations in the Joinder Arbitration Demand, you are not the successor in interest of Connolly Stucco.

According to the Joinder Arbitration Demand, the claimants' action against White arose from defective construction and/or installation of stucco, stone, roofing, windows, doors, decks, electrical systems, HVAC, heating, and plumbing systems.  Both the Arbitration Demands and the Joinder Arbitration Demand contend that these construction defects caused damage to the property owned by the claimants.

The Joinder Arbitration Demand further alleges that Connolly Stucco and White entered into two subcontracts, which were dated July 30, 2005 and February 26, 2007, respectively. It is our further understanding that under these subcontracts, Connolly Stucco agreed to undertake certain obligations relating to its work on the Project.  Among these obligations was the requirement that Connolly Stucco purchase general liability insurance that had liability limits of at least $500,000 per occurrence/$1,000,000 aggregate.  According to the allegations in the Joinder Arbitration Demand, the subcontracts also required Connolly Stucco to name White as an additional insured under the Policy.  However, it does not appear from the materials available to us that the

subcontracts contained such a provision.  The subcontracts did, however, require that Connolly Stucco indemnify and hold White harmless in the event of loss or damage arising out of Connolly Stucco's work.

According to the Joinder Arbitration Demand, Connolly Stucco was to perform the installation of stucco systems at the Project pursuant to these subcontracts.  As averred in the Joinder Arbitration Demand, Connolly Stucco's work was defective and caused the property damage claimed by the claimants in their respective Arbitration Demands.  White's Joinder Arbitration Demand asserts three claims against you and the other subcontractors:

- The "First Count," which is entitled "Contribution," seeks contribution from you for any award in favor of the claimants and against White, as you—like all of the other subcontractors—are alleged to be jointly and severally liable for the property damage caused by your faulty workmanship;

- The "Second Count," which is entitled "Common Law Indemnification," seeks indemnification from you and the other subcontractors for any award against White and in favor of the claimants, as you and the other subcontractors are alleged to be primarily and actively negligent; and

- The "Third Count," which is entitled "Contractual Defense and Indemnification," alleges that you and the other subcontractors are obligated to defend and indemnify White under the terms of the respective subcontracts, and it seeks indemnity for any award against White and in favor of the claimants.

## III.   RELEVANT POLICY PROVISIONS AND APPLICATION TO YOUR CLAIM

MSAA insured you under Businessowners Insurance Policy Number MPU9531P for the periods from August 24, 2015 to August 24, 2016; and from August 24, 2016 to August 24, 2017.  The Policy contained general liability coverage that had limits of $1,000,000 per occurrence; a $2,000,000 aggregate limit for products-completed operations; and a $2,000,000 aggregate limit for operations other than products-completed operations.  The Policy indicates that you are a "Corporation" that is engaged in "Carpentry."

The Policy's coverage for "Business Liability" provides, in relevant part, as follows:

### A.   Coverage

#### 1.   Business Liability

a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage", or "personal and advertising injury" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those

damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage", or "personal and advertising injury", to which this insurance does not apply.   We may at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.  But:

**(1)**     The amount we will pay for damages is limited as described in Section **D** – Liability and Medical Expenses Limits of Insurance in Section **II** - Liability; and

**(2)**     Our right and duty to defend end when we have used up the applicable Limit of Insurance in the payment of judgments or settlements or medical expenses.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Paragraph **f.** Coverage Extension – Supplementary Payments.

**b.**     This insurance applies:

**(1)**     To "bodily injury" and "property damage" only if:

**(a)**     The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory;" and

**(b)**     The "bodily injury" or "property damage" occurs during the policy period; and

**(c)**     Prior to the policy period, no insured listed under Paragraph **C.1** Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part.  If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property

5

damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known before the policy period.

.     .     .

**c.**     "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **C.1** Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of "bodily injury" or "property damage" after the end of the policy period.

**d.**     "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **C.1** Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)**     Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer

**(2)**     Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)**     Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

The term "occurrence" is defined in the Policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  The term "property damage" is defined in the Policy as:

a.     Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that cause it; or

> b.  Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

***Accordingly, to the extent the construction defects alleged in the Lawsuits do not constitute "property damage" as defined in the Policy, there would not be coverage for you with respect to the Lawsuits.  Similarly, to the extent that any "property damage" allegedly resulting from the construction defects alleged in the Lawsuits was not the result of an "occurrence," as that term is defined in the Policy, there would not be coverage for you under the Policy with respect to the Lawsuits.  In addition, to the extent that any "property damage" allegedly resulting from the construction defects alleged in the Lawsuits occurred outside of the effective periods of the Policy, there would not be coverage for you under the Policy with respect to the Lawsuits.***

The Policy contains several exclusions of coverage, including an exclusion for certain types of "property damage."  This exclusion provides, in relevant part, as follows:

> **k.    Damage to Property**
>
> "Property damage" to:
>
> \*          \*          \*
>
> (5)  That particular part of real property on which you or any contractor or subcontractor working directly or indirectly on your behalf is performing operations, if the "property damage" arises out of those operations; or
>
> (6)  That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.
>
> .          .          .
>
> Paragraph **(6)** of this exclusion does not apply to "property damage," included in the "products-completed operations hazard."

As regards Exclusion k, the Policy provides the following relevant definitions:

> 16.  "Products-completed operations hazard":
>
> **a.**  Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

**(1)**    Products that are still in your physical possession; or

**(2)**    Work that has not yet been completed or abandoned.  However, "your work" will be deemed completed at the earliest of the following times:

    **(a)**    When all of the work called for in your contract has been completed.

    **(b)**    When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

    **(c)**    When that part of the work done at the job site has been put to its intended use by any other person or organization other than another contractor or subcontractor working on the same project.

    Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

The "bodily injury" or "property damage" must occur away from premises you own or rent, unless your business includes the selling,  handling or distribution of "your product" for consumption on premises you own or rent.

**b.**    Does not include "bodily injury" or "property damage" arising out of:

**(1)**    The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured; or

**(2)**    The existence of tools, uninstalled equipment or abandoned or unused materials.

8

*   *   *

21.   "Your product":

   **a.**   Means:

      **(1)**   Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

         **(a)**   You;

         **(b)**   Others trading under your name; or

         **(c)**   A person or organization whose business or assets you have acquired; and

      **(2)**   Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

   **b.**   Includes:

      **(1)**   Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product;" and

      **(2)**   The providing of or failure to provide warnings or instructions.

   **c.**   Does not include vending machines or other property rented to or located for the use of others but not sold.

*   *   *

22.   "Your work":

   **a.**   Means:

      **(1)**   Work or operations performed by you or on your behalf; and

      **(2)**   Materials, parts or equipment furnished in connection with such work or operations.

   **b.**   Includes:

9

(1)  Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

(2)  The providing of or failure to provide warnings or instructions.

***Accordingly, to the extent that the Lawsuits allege or seek damages for "property damage" to real property on which you—or any contractor or subcontractor working directly and indirectly on your behalf—were performing operations, and if the alleged property damage arose from your operations, there would not be coverage under the Policy for the claims in the Lawsuits.  Likewise, to the extent that the Lawsuits allege or seek damages for "property damage" to any part of any property that must be restored, repaired, or replaced because your work was incorrectly performed on it, there would not be coverage under the Policy for the claims in the Lawsuits.***

The Policy also excludes coverage for "property damage" to "your product" or "your work":

**l.    Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**m.    Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

***Accordingly, to the extent that the Lawsuits allege or seek damages for "property damage" to any goods or products manufactured, sold, handled, distributed, or disposed of by you, including warranties or representations made at any time with respect to the fitness, quality, durability, performance, or use of your product, there would not be coverage under the Policy for the claims in the Lawsuits.  In addition, to the extent that the Lawsuits allege or seek damages for "property damage" to your work—that is, to the work or operations performed by you and/or on your behalf, including warranties or representations made at any time with respect to the fitness, quality, durability, performance, or use of your work—that is included in the "products-completed operations hazard," there would not be coverage under the Policy for the claims in the Lawsuits.***

The Policy also excludes coverage for "Damage To Impaired Property Or Property Not Physically Injured," such that the following is not covered by the Policy:

**n.** **Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

> **(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

> **(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

The Policy defines the term "impaired property" as follows:

> **8.** "Impaired Property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

> > **a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

> > **b.** You have failed to fulfill the terms of a contract or agreement;

> if such property can be restored to use by:

> > **(1)** The repair, replacement, adjustment or removal of "your product" or "your work"; or

> > **(2)** Your fulfilling the terms of the contract or agreement.

***Accordingly, to the extent that the Lawsuits allege or seek damages for "property damage" to tangible property—other than "your work" or "your product"—that cannot be used or is less useful because it incorporates "your work" or "your product" that was known to be defective, deficient, inadequate, or dangerous; and which was damaged by a defect, deficiency, inadequacy, or dangerous condition in "your work" or "your product," there would not be coverage under the Policy for the claims in the Lawsuits. Similarly, to the extent that the Lawsuits allege or seek damages for "property damage" to property—other than "your work"***

*or "your product"—that cannot be used or is less useful because it incorporates "your work" or "your product" that was known to be defective, deficient, inadequate, or dangerous, and which was damaged by a delay or failure by you—or anyone acting on your behalf—to perform a contract or agreement in accordance with its terms, there would not be coverage under the Policy for the claims in the Lawsuits.  Additionally, to the extent that the Lawsuits allege or seek damages for "property damage" to tangible property—other than "your work" or "your product"—that cannot be used or is less useful because you have failed to fulfill the terms of a contract or agreement, and which was damaged by either a defect, deficiency, inadequacy, or dangerous condition in "your work" or "your product" or by a delay or failure by you—or anyone acting on your behalf—to perform a contract or agreement in accordance with its terms, there would not be coverage under the Policy for the claims in the Lawsuits.*

The Policy also contains an exclusion for Exterior Insulation and Finish Systems, which provides as follows:

    **A.**    This insurance does not apply to "bodily injury", "property damage", or "personal and advertising injury arising out of, caused by, or attributable to, whether in whole or in part, the following:

        **1.**    The design, manufacture, construction, fabrication, preparation, distribution and sale, installation, application, maintenance or repair, including remodeling, service, correction or replacement, of any "exterior insulation and finish system" or any part thereof, including the application or use of conditioners, primers, accessories, flashings, coatings, caulking or sealants in connection with such a system; or

        **2.**    "Your product" or "your work" with respect to any exterior component, fixture or feature of any structure if an "exterior insulation and finish system", or any substantially similar system, is used on the part of the at structure containing that component, fixture or feature.

    **B.**    The following definition is added to the **Definitions** Section:

        "Exterior insulation and finish system" means a non-load bearing exterior cladding or finish system, and all component parts therein, used on any part of any structure, and consisting of:

        **1.**    A rigid or semi-rigid insulation board made of expanded polystyrene and other materials;

2.      The adhesive and/or mechanical fasteners used to attach the insulation board to the substrate;

3.      A reinforced or unreinforced base coat;

4.      A finish coat providing surface texture to which color may be added; and

5.      Any flashing, caulking or sealant used with the system for any purpose.

***Accordingly, to the extent that the Lawsuits allege or seek damages for "property damage" arising out of, caused by, or attributable to the design, manufacture, construction, installation, and maintenance and repair (including correction or replacement) of any exterior insulation and finishing system, there would not be coverage under the Policy for the claims in the Lawsuits.***

The Policy also includes a Fungi or Bacteria Exclusion endorsement, which provides as follows:

     **t.**      **Fungi Or Bacteria**

**(1)**      "Bodily injury", "property damage" or "personal and advertising injury" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

**(2)**      Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating, or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

     This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for consumption.

The Policy defines the term "fungi" to mean "any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or by-products produced or released by fungi."

***Accordingly, to the extent that the Lawsuits allege or seek damages for "property damage" that would not have occurred but for the presence of mold, there would not be coverage under the Policy for the claims in the Lawsuits.***

The Policy also excludes coverage for "Contractual Liability," which is defined as follows:

> "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.   This exclusion does not apply to liability for damages:
>
> > (1)   That the insured would have in the absence of the contract or agreement; or
> >
> > (2)   Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement.  Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided
> >
> > > (a)   Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and
> > >
> > > (b)   Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

The Policy defines the term "Insured contract" to mean the following (in relevant part):

> 9.   "Insured contract" means:
>
> .      .      .
>
> > f.   That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization, provided the "bodily injury" or "property damage" is caused, in whole or

14

in part, by you or those acting on your behalf.  Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

***Accordingly, to the extent that the Lawsuits allege or seek damages for which you assumed liability in a contract that is not an insured contract, there would not be coverage under the Policy for the claims in the Lawsuits.***

Finally, the Policy provides that in the event that there is other insurance that would provide coverage for you in connection with the claims in the Lawsuits, the coverage under the Policy would operate as follows:

### H.    Other Insurance

.    .    .

**2.**    Business Liability Coverage is excess over:

**a.**    Any other insurance that insures for direct physical loss or damage; or

**b.**    Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by the attachment of an endorsement.

**3**.    When this insurance is excess, we will have no duty under Business Liability Coverage to defend any claim or "suit" that any other insurer has a duty to defend.  If no other insurer defends, we will undertake to do so; but we will be entitled to the insured's rights against all those other insurers.

***Accordingly, to the extent that you are entitled to additional insured coverage for the allegations in the Lawsuits under a policy of insurance other than the MSAA Policy, any coverage obligation MSAA may have under the Policy would be excess to this other insurance. This includes, but is not limited to, any additional insured coverage to which you are entitled under an insurance policy issued to any subcontractors employed by you.  We would therefore request that you advise us as to any additional insured coverage to which you might be entitled under any other policy of insurance.***

## IV.    <u>COVERAGE DETERMINATION</u>

Based on our review and evaluation of the claims in the Lawsuits and the information obtained during our investigation of your claim, MSAA has determined that, for the several reasons noted above, the Policy may not provide coverage for some or all of the claims asserted against you in the Lawsuits.  Specifically, as discussed above, the Policy does not provide coverage for claims for "property damage" that is not the result of an "occurrence."  In addition, the Policy does not provide coverage for claims for "property damage" to your work or for the cost of repairing your

own defective work.  Moreover, as discussed above, several exclusions limit the coverage available to you for the claims asserted in the Lawsuits.  For all of these reasons, MSAA has determined that there may not be coverage under the Policy for some or all of the claims for damages asserted against you in the Lawsuits.

Notwithstanding the foregoing, MSAA agrees to continue to provide a defense for you in connection with the claims in the Lawsuits pursuant to the terms of the Policy, and subject to a full and complete reservation of MSAA's rights under the Policy and applicable law.  In connection with this reservation of rights, MSAA agrees to pay its fair share of the reasonable and necessary expenses in coordination with any other insurance carriers involved in this claim.  As such, if there is any additional insurance coverage that may provide commercial general liability coverage for you in connection with the Lawsuits, we request that you provide that information to us immediately.

Please note that although MSAA will continue to provide you with a defense in the Lawsuits, MSAA may not defend or indemnify you for any liability, settlement, judgment, or damages awarded in the Lawsuits that result from certain acts, conduct, or omissions that are not covered under the Policy.  We must also advise you that there is no coverage under the Policy for an award of damages that exceeds the Policy limits.  Similarly, to the extent that the Lawsuits seek the recovery of punitive damages, there may not be coverage under the Policy. **You should therefore retain personal counsel—at your own cost—to advise and represent you with respect to those issues, claims, and damages that are not covered by the Policy**.

MSAA hereby reserves the right to allocate between claims to which the Policy applies, and those claims to which the Policy does not apply; this includes any damages that exceed the Policy limits, and any claims for "property damage" to your own work or which occurred outside of the Policy period.  MSAA further reserves the right to allocate between any payments or settlements; and, to the extent permitted by law and the Policy, to pursue reimbursement of any and all payments made by MSAA for claims to which the Policy does not apply.  No payment by MSAA shall constitute a waiver of its rights to later seek allocation or reimbursement if there is no duty to defend or indemnify any paid claim.  If MSAA learns of facts or other information indicating that the Policy does not apply, MSAA further reserves the right to deny application of the Policy and withdraw from any further participation in this matter.  Additionally, MSAA hereby reserves the right to file a declaratory judgment action against you and any other parties, in which MSAA will seek a ruling from a court of competent jurisdiction as to MSAA's duty to continue to defend you in the Lawsuits and/or its duty to indemnify you under the Policy.  Finally, pursuant to the "Pennsylvania Changes – Defense Costs" Endorsement (Form No. BP 0607 (05/11)), MSAA reserves the right under the terms and conditions of the Policy to seek reimbursement of the defense costs it expends to defend you for claims that are determined to not be covered under the Policy.

MSAA's comments in this letter regarding specific provisions of the Policy do not constitute a modification or waiver of any of the Policy's provisions.  MSAA does not waive its right to assert or rely on any term, condition, exclusion, or other provision of the Policy or applicable law not specifically addressed or referred to in this letter to deny or limit application of the Policy.  By this letter, MSAA reserves all of its rights under the Policy and applicable law, including but

not limited to its right to supplement or modify this letter should additional information become available that indicates that any other Policy provision may provide, bar, or limit coverage.

As previously noted, this coverage determination is based on the information MSAA has received to date.  If the claims against you are expanded or modified in any manner—such as by the filing of an amended pleading—please immediately forward a copy of such amended claims or allegations to our attention.  MSAA will review these revised allegations to determine whether the insurance provided by the Policy would apply to them.  Moreover, please also contact us immediately if you disagree with this letter, or if you know of any different or additional facts or documents regarding this claim, the Lawsuits, or the Policy that you believe may be important to our coverage determination.  MSAA will use the information you provide to ensure that it fully performs its obligations under the Policy and applicable law.

Please be sure to include claim number **MPU9531P-100001** on any materials sent to our office.

Sincerely,

*Terence Youngblood*

TERENCE YOUNGBLOOD
Sr. Claim Specialist
The Main Street America Group
904-380-7111


cc:      Jeffrey C. Sotland, Esq.
         MINTZER SAROWITZ ZERIS LEDVA & MEYERS, LLP
         Centre Square, West Tower
         1500 Market St.
         Suite 4100
         Philadelphia, PA 19102


         BARNES FINANCIAL GROUP INC AGENT NUMBER: 371429

 

May 15, 2020

***Sent via Regular Mail and Certified Mail – Return Receipt Requested***

Connolly Contractors, Inc.
1229 Valley Road
Glen Mills, PA 19342

<u>**Reservation of Rights**</u>

|  | | |
|---|---|---|
| **RE:** | **Claim Nos.:** | **01-MPU9531P-100001; 01-MPU9531P-100003;**<br>**01-MPU9531P-100005** |
| | **Policy No.:** | **MPU9531P; MPU8041R; CUU9531P** |
| | **Insured:** | **Connolly Contractors, Inc.** |
| | **Policy Period:** | **8/24/2015 to 8/24/2019** |

Dear Connolly Contractors, Inc. ("You"):

As you are aware, Main Street America Assurance Company ("MSAA," "us," or "we") issued the above-referenced policies of insurance to you.  We previously received copies of the claims and/or American Arbitration Association ("AAA") arbitration demands alleging defects in your construction work at the following homeowners' homes in the Brick House Farm development: Galarneau (1014 Brick House Farm Lane); Egan (1016 Brick House Farm Lane); Gill (1028 Brick House Farm Lane); Hoff (1022 Brick House Farm Lane); Hanway (1030 Brick House Farm Lane); Fant and Boyko (1009 Brick House Farm Lane); and Nathans (1027 Brick House Farm Lane).  As you are also aware, MSAA is defending you in connection with the foregoing claims and/or AAA arbitration demands pursuant to the reservation of rights set forth in our correspondence to you dated March 15, 2019; July 30, 2019; November 6, 2019; and December 10, 2019.

In addition to the foregoing claims and/or AAA arbitration demands, we have recently received first notice of construction defect claims involving the following homeowners' homes in the Brick House Farms development:

- Campbell (1011 Brick House Farm Lane);

- Plick (1013 Brick House Farm Lane);

- Sturz (1007 Brick House Farm Lane);

- Netter (1021 Brick House Farm Lane);

- Zahm (1003 Brick House Farm Lane);

- Rydysky (1010 Brick House Farm Lane);

- Woods (1017 Brick House Farm Lane);

- Shah (1020 Brick House Farm Lane);

- Holloway (1025 Brick House Farm Lane);

- Johnstone (1026 Brick House Farm Lane);

- Nathan (1018 Brick House Farm Lane);

- Woods (1017 Brick House Farm Lane);

- Kelly (1024 Brick House Farm Lane);

- Karlak (1038 Brick House Farm Lane);

- Roam (1023 Brick House Farm Lane); and

- O'Connell (1032 Brick House Farm Lane).

The foregoing claims will be collectively referred to in this letter as the "Additional Claims."

It is our understanding that some of the Additional Claims are currently pending either before an AAA arbitrator or in a court of law, whereas others have not yet been made subject of a lawsuit or AAA proceeding. Nevertheless, in light of MSAA's receipt of notice of the Additional Claims, we are writing to provide you with an update regarding MSAA's position regarding your claims for coverage with respect to your work on the Brick House Farm development and the subsequent construction defect claims/litigation. In doing so, MSAA hereby incorporates by reference the contents of its previous correspondence to you regarding this matter, including (but not limited to) the referenced March 15, 2019; July 30, 2019; November 6, 2019; and December 10, 2019 letters.

**Please provide us with your job file pertaining to this project. We also request that you notify any carrier that may provide coverage prior to August 24, 2016. In addition, we request that you notify any insurance carriers that may provide coverage to Connolly Plaster & Stucco, Inc. Please provide us with their contact information and claim number.**

## I.   SUMMARY OF MSAA'S COVERAGE DETERMINATION

MSAA has carefully reviewed and evaluated the facts and allegations of the Additional Claims, as well as those documents obtained during MSAA's investigation of your claim. Based upon the information available to MSAA at this time, the above-referenced insurance policies may not provide coverage, in whole or in part, for you regarding some or all of the Additional Claims. **Notwithstanding this conclusion, MSAA will continue to provide a defense for you in connection with the previously-filed actions, subject to a full and complete reservation of**

2

**MSAA's rights and defenses under the insurance policies and under applicable law, as set forth in our prior correspondence**.  **MSAA will also extend the defense provided to you under reservation of rights to the Additional Claims, as set forth below.**

Please be advised that MSAA's defense of you in connection with the Additional Claims pursuant and subject to the reservation of rights set forth herein is not—and shall not be deemed to constitute—an admission or acknowledgment that the above-referenced insurance policies apply to the claims in the Additional Claims, or that MSAA has any obligation under these policies as regards the claims for damages asserted in the Additional Claims —including, but not limited to, any obligation to defend or indemnify you.  By defending you against the Additional Claims pursuant and subject to this reservation of rights, MSAA shall not be estopped from raising any defenses under the above-referenced insurance policies or applicable law.

Pursuant to the policies and this reservation of rights, MSAA will continue to retain the following counsel to defend you in connection with the Additional Claims:

> **Jeffrey C. Sotland, Esq.**
> **MINTZER SAROWITZ ZERIS LEDVA & MEYERS, LLP**
> **Centre Square, West Tower**
> **1500 Market St.**
> **Suite 4100**
> **Philadelphia, PA 19102**
> **(215) 735-7200**
> **jsotland@defensecounsel.com**

Please note that although MSAA will continue to provide you with a defense in connection with the Additional Claims, MSAA may not defend or indemnify you for any liability, settlement, judgment, or damages awarded in the Additional Claims that result from certain acts, conduct, or omissions that are not covered under the above-referenced insurance policies.  In addition, MSAA may not provide coverage for any award of damages that exceeds the applicable policy limits. **You should therefore retain personal counsel to protect your interests and advise you with respect to these potentially uncovered claims and/or damages**.

**You have the option to accept or reject MSAA's offer to defend you in connection with the Additional Claims pursuant to the following reservation of rights.  If you wish to reject MSAA's offer of continued representation, please advise us in writing within 10 days.  Absent receipt of such notice, MSAA will assume that you consent to the continued defense being offered subject to this reservation of rights.**  In the event that you do not wish to accept MSAA's offer of a continued defense, you should immediately retain personal counsel to defend you, at your own expense.  Upon receipt of such notice, we will make arrangements to transfer the litigation file materials to your personal counsel.

*Please note that this reservation of rights is based on the information MSAA has received to date and the information set forth in the prior litigation and the Additional Claims.  If there is additional information that you would like us to consider, or if there are any other persons to whom we should direct this correspondence, please let us know.  Otherwise, we will consider this adequate notice of MSAA's coverage position regarding the Additional Claims.*

## II.     THE ADDITIONAL CLAIMS AND MSAA'S INVESTIGATION

*The information set forth below is based on the documents and information available to MSAA at this time, including the correspondence, pleadings, and/or arbitration demands filed in connection with the prior litigation or the Additional Claims.  To the extent that you have received—or subsequently do receive—additional information or documents bearing on the claims against you, kindly provide that information or those documents for our review.*

The Additional Claims (and the other litigation discussed in our previous correspondence to you) arise out of the construction and sale of several properties in the Brick House Farm development (the "Project").  Five homeowners—Egan, Gill, Hoff, Galarneau, and Hanway—originally filed AAA arbitration demands on or about September 4, 2018.  Those arbitration demands were directed against Glenn M. White Builders, Inc. ("White"), which was the general contractor on the Project.  According to the arbitration demands, the claimants purchased the homes between 2005 and 2007 "as a direct result of [White's] marketing materials and other representations related to the quality of the Property."  Each homeowner alleged that he or she subsequently discovered moisture penetration that was the result of faulty workmanship and materials, and that this moisture penetration caused property damage.  Each claimant alleged claims for Breach of Contract; Violation of the Pennsylvania Real Estate Disclosure Law, 68 P.S. § 7308, *et seq*.; Breach of Implied Warranties of Habitability and Workmanlike Construction; Negligence; Misrepresentation; and Violation of the Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1, *et seq*.

Thereafter, White filed a joinder arbitration demand, in which it named you as one of the respondents.  White's joinder arbitration demand alleged that you were the successor or assignee of Connolly Stucco & Plastering, Inc. ("Connolly Stucco").  It is our understanding from the information provided to us that Connolly Stucco was the company that did the work on the Project.  It is our further understanding that although Connolly Stucco was owned and operated by your principal (Mr. Connolly), it ceased to exist prior to the effective period of the Policy.  In this regard, it is our understanding that you were first created in 2014, and that Connolly Stucco ceased to exist at that time.  It is our further understanding that despite the allegations in White's joinder arbitration demand, you claim that you are not the successor in interest of Connolly Stucco.

According to White's joinder arbitration demand, the claimants' actions against White arose from defective construction and/or installation of stucco, stone, roofing, windows, doors, decks, electrical systems, HVAC, heating, and plumbing systems of the various homeowners in the Brick House Farm development.  Both the arbitration demands against White and White's joinder arbitration demand contend that these construction defects caused damage to the property owned by the claimants.

White's joinder arbitration demand further alleges that Connolly Stucco and White entered into two subcontracts; these contracts were dated July 30, 2005 and February 26, 2007, respectively. It is our further understanding that under these subcontracts, Connolly Stucco agreed to undertake certain obligations relating to its work on the Project.  Among these obligations was the requirement that Connolly Stucco purchase general liability insurance that had liability limits of at least $500,000 per occurrence/$1,000,000 aggregate.  According to the allegations in White's joinder arbitration demand, the subcontracts also required Connolly Stucco to name White as an

additional insured under the Policy.  However, it does not appear from the materials available to us that the subcontracts contained such a provision.  The subcontracts did, however, require that Connolly Stucco indemnify and hold White harmless in the event of loss or damage arising out of Connolly Stucco's work.

According to White's joinder arbitration demand, Connolly Stucco was to perform the installation of stucco systems at the Project pursuant to these subcontracts.  As averred in White's joinder arbitration demand, Connolly Stucco's work was defective and caused the property damage claimed by the claimants in their respective arbitration demands.  White's joinder arbitration demand asserts three claims against you and the other subcontractors:

- The "First Count," which is entitled "Contribution," seeks contribution from you for any award in favor of the claimants and against White, as you—like all of the other subcontractors—are alleged to be jointly and severally liable for the property damage caused by your faulty workmanship;

- The "Second Count," which is entitled "Common Law Indemnification," seeks indemnification from you and the other subcontractors for any award against White and in favor of the claimants, as you and the other subcontractors are alleged to be primarily and actively negligent; and

- The "Third Count," which is entitled "Contractual Defense and Indemnification," alleges that you and the other subcontractors are obligated to defend and indemnify White under the terms of the respective subcontracts, and it seeks indemnity for any award against White and in favor of the claimants.

Subsequent to White's filing of its joinder arbitration demand, several additional homeowners made claims arising out of allegedly defective construction of their homes.  These additional claims are referenced in our previous correspondence to you and in the list set forth above.  It is our understanding that several of the aforementioned claimants have filed AAA arbitration demands or lawsuits against White, and that White has joined you in those proceedings.  Thereafter, we received notice of the Additional Claims.

## III.   RELEVANT POLICY PROVISIONS AND APPLICATION TO YOUR CLAIM

### A.   THE PRIMARY POLICIES

MSAA insured you under Businessowners Insurance Policy Number MPU9531P for the periods from August 24, 2015 to August 24, 2016; and from August 24, 2016 to August 24, 2017 (the "MPU9531P Policy").  The MPU9531P Policy contained general liability coverage that had limits of $1,000,000 per occurrence; a $2,000,000 aggregate limit for products-completed operations; and a $2,000,000 aggregate limit for operations other than products-completed operations.  The MPU9531P Policy indicates that you are a "Corporation" that is engaged in "Carpentry."  Thereafter, MSAA insured you under Businessowners Insurance Policy Number MPU8041R for the periods from August 24, 2017 to August 24, 2018; and from August 24, 2018 to August 24, 2019 (the "MPU8041R Policy").  The MPU8041R Policy had the same limits of liability and relevant coverages as were included in the MPU9531P Policy.

As used in the MPU9531P Policy and the MPU8041R Policy (collectively, the "Primary Policies," the term "you" is defined to mean the named insured listed on the Primary Policies—that is, Connolly Contractors, Inc.  Because you are designated as a corporation, the Primary Policies define the term "insured" as follows:

> 1.    If you are designated in the Declarations as:
>
> .        .        .
>
> d.    An organization other than a partnership, joint venture or limited liability company, you are an insured.  Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors.  Your stockholders are also insureds, but only with respect to their liability as stockholders.

The Primary Policies further provide that "No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations."

***Accordingly, to the extent that Connolly Stucco is not a named insured under the Primary Policies, there may not be coverage for you with respect to Connolly Stucco's liability for the Additional Claims.***

The coverage for "Business Liability" in the Primary Policies provides, in relevant part, as follows:

**A.    Coverage**

**1.    Business Liability**

> **a.**    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage", or "personal and advertising injury" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage", or "personal and advertising injury", to which this insurance does not apply.  We may at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.  But:
>
> **(1)**    The amount we will pay for damages is limited as described in Section **D** – Liability and Medical Expenses Limits of Insurance in Section **II** - Liability; and

    **(2)**    Our right and duty to defend end when we have used up the applicable Limit of Insurance in the payment of judgments or settlements or medical expenses.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Paragraph **f.** Coverage Extension – Supplementary Payments.

**b.**    This insurance applies:

    **(1)**    To "bodily injury" and "property damage" only if:

        **(a)**    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory;" and

        **(b)**    The "bodily injury" or "property damage" occurs during the policy period; and

        **(c)**    Prior to the policy period, no insured listed under Paragraph **C.1** Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part.  If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known before the policy period.

.     .     .

**c.**    "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **C.1** Who Is An

Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of "bodily injury" or "property damage" after the end of the policy period.

**d**.     "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **C.1** Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)**     Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer

**(2)**     Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)**     Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

The term "occurrence" is defined in the Primary Policies as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." The term "property damage" is defined in the Primary Policies as:

a.     Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b.     Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

***According to the documents and information provided to us, the Additional Claims allege that the stucco work performed by you and/or Connolly Stucco pursuant to the subcontracts with White was defective in the manner discussed above. To the extent these construction defects do not constitute "property damage" as defined in the Primary Policies, there would not be coverage for you with respect to the Additional Claims. Similarly, to the extent that any "property damage" allegedly resulting from the construction defects alleged in the Additional Claims was not the result of an "occurrence," as that term is defined in the Primary Policies, there would not be coverage for you under the Primary Policies with respect to the Additional Claims. In addition, to the extent that any "property damage" allegedly resulting from the construction defects alleged in the Additional Claims occurred outside of the effective periods***

*of the Primary Policies, there would not be coverage for you under the Primary Policies with respect to the Additional Claims.*

The Primary Policies contain several exclusions of coverage, including an exclusion for certain types of "property damage."  This exclusion provides, in relevant part, as follows:

> **k.**     **Damage to Property**
>
> "Property damage" to:
>
> *       *       *
>
> (5)     That particular part of real property on which you or any contractor or subcontractor working directly or indirectly on your behalf is performing operations, if the "property damage" arises out of those operations; or
>
> (6)     That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.
>
> .       .       .
>
> Paragraph **(6)** of this exclusion does not apply to "property damage," included in the "products-completed operations hazard."

As regards Exclusion k, the Primary Policies provide the following relevant definitions:

> 16.     "Products-completed operations hazard":
>
> **a.**     Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:
>
> **(1)**     Products that are still in your physical possession; or
>
> **(2)**     Work that has not yet been completed or abandoned.  However, "your work" will be deemed completed at the earliest of the following times:
>
> **(a)**     When all of the work called for in your contract has been completed.

9

       **(b)**    When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

       **(c)**    When that part of the work done at the job site has been put to its intended use by any other person or organization other than another contractor or subcontractor working on the same project.

       Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

The "bodily injury" or "property damage" must occur away from premises you own or rent, unless your business includes the selling, handling or distribution of "your product" for consumption on premises you own or rent.

**b.**    Does not include "bodily injury" or "property damage" arising out of:

    **(1)**    The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured; or

    **(2)**    The existence of tools, uninstalled equipment or abandoned or unused materials.

\*    \*    \*

**21.**    "Your product":

**a.**    Means:

    **(1)**    Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

       **(a)**    You;

10

      **(b)**    Others trading under your name; or

      **(c)**    A person or organization whose business or assets you have acquired; and

  **(2)**    Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.**    Includes:

  **(1)**    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product;" and

  **(2)**    The providing of or failure to provide warnings or instructions.

**c.**    Does not include vending machines or other property rented to or located for the use of others but not sold.

*    *    *

**22.**    "Your work":

**a.**    Means:

  **(1)**    Work or operations performed by you or on your behalf; and

  **(2)**    Materials, parts or equipment furnished in connection with such work or operations.

**b.**    Includes:

  **(1)**    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

  **(2)**    The providing of or failure to provide warnings or instructions.

*As discussed above, the Additional Claims allege that the stucco work performed by you and/or Connolly Stucco was defective, and therefore needs to be removed and replaced.  To the extent that the Additional Claims allege or seek damages for "property damage" to real property on*

*which you—or any contractor or subcontractor working directly and indirectly on your behalf—were performing operations, and if the alleged property damage arose from your operations, there would not be coverage under the Primary Policies for the Additional Claims. Likewise, to the extent that the Additional Claims allege or seek damages for "property damage" to any part of any property that must be restored, repaired, or replaced because your work was incorrectly performed on it, there would not be coverage under the Primary Policies for the Additional Claims.*

The Primary Policies also exclude coverage for "property damage" to "your product" or "your work":

      **l.**     **Damage To Your Product**

            "Property damage" to "your product" arising out of it or any part of it.

      **m.**     **Damage To Your Work**

            "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

            This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

*Accordingly, to the extent that the Additional Claims allege or seek damages for "property damage" to any goods or products manufactured, sold, handled, distributed, or disposed of by you, including warranties or representations made at any time with respect to the fitness, quality, durability, performance, or use of your product, there would not be coverage under the Primary Policies for the Additional Claims. In addition, to the extent that the Additional Claims allege or seek damages for "property damage" to your work—that is, to the work or operations performed by you and/or on your behalf, including warranties or representations made at any time with respect to the fitness, quality, durability, performance, or use of your work—that is included in the "products-completed operations hazard," there would not be coverage under the Primary Policies for the Additional Claims.*

The Primary Policies also exclude coverage for "Damage To Impaired Property Or Property Not Physically Injured," such that the following is not covered by the Primary Policies:

      **n.**     **Damage To Impaired Property Or Property Not Physically Injured**

            "Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1)     A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2)     A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

The Primary Policies define the term "impaired property" as follows:

**8.**     "Impaired Property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.**     It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.**     You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

(1)     The repair, replacement, adjustment or removal of "your product" or "your work"; or

(2)     Your fulfilling the terms of the contract or agreement.

***Accordingly, to the extent that the Additional Claims allege or seek damages for "property damage" to tangible property—other than "your work" or "your product"—that cannot be used or is less useful because it incorporates "your work" or "your product" that was known to be defective, deficient, inadequate, or dangerous; and which was damaged by a defect, deficiency, inadequacy, or dangerous condition in "your work" or "your product," there would not be coverage under the Primary Policies for the Additional Claims. Similarly, to the extent that the Additional Claims allege or seek damages for "property damage" to property—other than "your work" or "your product"—that cannot be used or is less useful because it incorporates "your work" or "your product" that was known to be defective, deficient, inadequate, or dangerous, and which was damaged by a delay or failure by you—or anyone acting on your behalf—to perform a contract or agreement in accordance with its terms, there would not be coverage under the Primary Policies for the Additional Claims. Additionally, to the extent that the Additional Claims allege or seek damages for "property damage" to tangible property—other than "your work" or "your product"—that cannot be used or is less useful because you have***

*failed to fulfill the terms of a contract or agreement, and which was damaged by either a defect, deficiency, inadequacy, or dangerous condition in "your work" or "your product" or by a delay or failure by you—or anyone acting on your behalf—to perform a contract or agreement in accordance with its terms, there would not be coverage under the Primary Policies for the Additional Claims.*

The Primary Policies also contain an exclusion for Exterior Insulation and Finish Systems, which provides as follows:

    **A.**    This insurance does not apply to "bodily injury", "property damage", or "personal and advertising injury arising out of, caused by, or attributable to, whether in whole or in part, the following:

    **1.**    The design, manufacture, construction, fabrication, preparation, distribution and sale, installation, application, maintenance or repair, including remodeling, service, correction or replacement, of any "exterior insulation and finish system" or any part thereof, including the application or use of conditioners, primers, accessories, flashings, coatings, caulking or sealants in connection with such a system; or

    **2.**    "Your product" or "your work" with respect to any exterior component, fixture or feature of any structure if an "exterior insulation and finish system", or any substantially similar system, is used on the part of the at structure containing that component, fixture or feature.

    **B.**    The following definition is added to the **Definitions** Section:

"Exterior insulation and finish system" means a non-load bearing exterior cladding or finish system, and all component parts therein, used on any part of any structure, and consisting of:

    **1.**    A rigid or semi-rigid insulation board made of expanded polystyrene and other materials;

    **2.**    The adhesive and/or mechanical fasteners used to attach the insulation board to the substrate;

    **3.**    A reinforced or unreinforced base coat;

    **4.**    A finish coat providing surface texture to which color may be added; and

14

> **5.** Any flashing, caulking or sealant used with the system for any purpose.

*Accordingly, to the extent that the Additional Claims allege or seek damages for "property damage" arising out of, caused by, or attributable to the design, manufacture, construction, installation, and maintenance and repair (including correction or replacement) of any exterior insulation and finishing system, there would not be coverage under the Primary Policies for the Additional Claims.*

The Primary Policies also include a Fungi or Bacteria Exclusion endorsement, which provides as follows:

> **t.** **Fungi Or Bacteria**
>
> **(1)** "Bodily injury", "property damage" or "personal and advertising injury" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.
>
> **(2)** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating, or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.
>
> This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for consumption.

The Primary Policies define the term "fungi" to mean "any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or by-products produced or released by fungi."

*It is our understanding that one or more of the Additional Claims alleges that your defective construction work resulted in the growth of mold. Accordingly, to the extent that the Additional Claims allege or seek damages for "property damage" that would not have occurred but for the presence of mold, there would not be coverage under the Primary Policies for the Additional Claims.*

The Primary Policies also exclude coverage for "Contractual Liability," which is defined as follows:

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.  This exclusion does not apply to liability for damages:

(1)    That the insured would have in the absence of the contract or agreement; or

(2)    Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement.  Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided

(a)    Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b)    Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

The Primary Policies define the term "Insured contract" to mean the following (in relevant part):

9.    "Insured contract" means:

.    .    .

f.    That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization, provided the "bodily injury" or "property damage" is caused, in whole or in part, by you or those acting on your behalf.  Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

***As noted above, White has alleged that the subcontracts require you to defend and indemnify it for its liability resulting from your work on the Project.  Accordingly, to the extent that the***

16

*Additional Claims or White's joinder arbitration demands in connection therewith allege or seek damages for which you assumed liability in a contract that is not an insured contract, there would not be coverage under the Primary Policies for the contractual liability claims related to the Additional Claims.  Additionally, to the extent that the contract or agreement under which you agreed to assume the liability of another party, including White, is an "insured contract" but was not entered into until after the occurrence of the "property damage" alleged in the Additional Claims, there would not be coverage under the Primary Policies for the contractual liability claims related to the Additional Claims.*

The Primary Policies provide that if there is other insurance that would provide coverage for you in connection with the Additional Claims, the coverage under the Primary Policies would operate as follows:

### H.   Other Insurance

.     .     .

2.   Business Liability Coverage is excess over:

a.   Any other insurance that insures for direct physical loss or damage; or

b.   Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by the attachment of an endorsement.

3.   When this insurance is excess, we will have no duty under Business Liability Coverage to defend any claim or "suit" that any other insurer has a duty to defend.  If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

*Accordingly, to the extent that you are entitled to additional insured coverage for the allegations in the Additional Claims under a policy of insurance other than the MSAA Primary Policies, any coverage obligation MSAA may have under the Primary Policies would be excess to this other insurance.  This includes, but is not limited to, any additional insured coverage to which you are entitled under an insurance policy issued to any subcontractors employed by you.  We would therefore request that you advise us as to any additional insured coverage to which you might be entitled under any other policy of insurance.*

The Primary Policies contain an endorsement entitled "Pennsylvania Changes – Defense Costs." This endorsement provides as follows:

If we initially defend an insured or pay for an insured's defense but later determine that none of the claims, for which we provided a defense or defense costs, are covered under this insurance, we have the right to reimbursement for the defense costs we have incurred.

17

The right to reimbursement under this provision will only apply to the costs we have incurred after we notify you in writing that there may not be coverage and that we are reserving our rights to terminate the defense or the payment of defense costs and to seek reimbursement for defense costs.

***Accordingly, to the extent that it is later determined that MSAA has no duty to defend you under the Primary Policies with respect to the Additional Claims, MSAA hereby reserves the right to seek to recover the defense costs it incurs in defending you against the Additional Claims.***

### B.      THE UMBRELLA POLICIES

In addition to the Primary Policies, MSAA issued a commercial umbrella insurance policy to you (the "Umbrella Policy"). The Umbrella Policy bore MSAA policy number CUU9531P, and had effective dates of August 24, 2015 to August 24, 2017. The Umbrella Policy was cancelled in 2017 at your request. The Umbrella Policy contained liability coverage that had limits of $2,000,000 per occurrence; and a $2,000,000 aggregate limit for liability. The Umbrella Policy has a $10,000 self-insured retention. The Umbrella Policy designates your business form as a "Corporation" that is engaged in the business of "Carpentry (NOC)."

As used in the Umbrella Policy, the term "you" is defined to mean the named insured listed on the Umbrella Policy—that is, Connolly Contractors, Inc. Because you are designated as a corporation, the Umbrella Policy define the term "insured" as follows:

> 1.      If you are designated in the Declarations as:
>
> .          .          .
>
> d.      An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

The Umbrella Policy further provides that "No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations."

***Accordingly, to the extent that Connolly Stucco is not a named insured under the Umbrella Policy, there may not be coverage for you with respect to Connolly Stucco's liability for the Additional Claims.***

The coverage for "Bodily Injury and Property Damage Liability" in the Umbrella Policy provides, in relevant part, as follows:

### 1.      Insuring Agreement

a.   We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking damages for such "bodily injury" or "property damage" when the "underlying insurance" does not provide coverage or the limits of "underlying insurance" have been exhausted. When we have no duty to defend, we will have the right to defend, or to participate in the defense of, the insured against any other "suit" seeking damages to which this insurance may apply. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. At our discretion, we may investigate any "occurrence" that may involve this insurance and settle any resultant claim or "suit" for which we have the duty to defend. But:

(1)   The amount we will pay for the "ultimate net loss" is limited as described in Section **III** – Limits of Insurance; and

(2)   Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

b.   This insurance applies to "bodily injury" or "property damage" that is subject to an applicable "retained limit." If any other limit, such as a sublimit, is specified in the "underlying insurance", this insurance does not apply to "bodily injury" or "property damage" arising out of that exposure unless that limit is specified in the Declarations under the Schedule of "underlying insurance".

c.    This insurance applies to "bodily injury" and "property damage" only if:

(1)   The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory;" and

19

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.a.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part.  If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known before the policy period.

**d.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.a.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of "bodily injury" or "property damage" after the end of the policy period.

**e.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.a.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

The MPU9531P Policy is listed in the Schedule of Underlying Insurance for the Umbrella Policy. The term "occurrence" is defined in the Umbrella Policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  The term "property damage" is defined in the Policy as:

a. Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

***According to the documents and information provided to us, the Additional Claims allege that the stucco work performed by you and/or Connolly Stucco pursuant to the subcontracts with White was defective in the manner discussed above.  To the extent these construction defects do not constitute "property damage" as defined in the Umbrella Policy, there would not be coverage for you under the Umbrella Policy with respect to the Additional Claims.  Similarly, to the extent that any "property damage" allegedly resulting from the construction defects alleged in the Additional Claims was not the result of an "occurrence," as that term is defined in the Umbrella Policy, there would not be coverage for you under the Umbrella Policy with respect to the Additional Claims.  In addition, to the extent that any "property damage" allegedly resulting from the construction defects alleged in the Additional Claims occurred outside of the effective periods of the Umbrella Policy, there would not be coverage for you under the Umbrella Policy with respect to the Additional Claims.***

The Umbrella Policy contains several exclusions of coverage, including an exclusion for certain types of "property damage."  This exclusion provides, in relevant part, as follows:

**m.    Damage to Property**

"Property damage" to:

\*        \*        \*

(5)    That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6)    That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

.        .        .

Paragraph **(6)** of this exclusion does not apply to "property damage," included in the "products-completed operations hazard."

As regards Exclusion m, the Umbrella Policy provides the following relevant definitions:

21

**17.**     "Products-completed operations hazard":

**a.**     Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

**(1)**     Products that are still in your physical possession; or

**(2)**     Work that has not yet been completed or abandoned.  However, "your work" will be deemed completed at the earliest of the following times:

**(a)**     When all of the work called for in your contract has been completed.

**(b)**     When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

**(c)**     When that part of the work done at the job site has been put to its intended use by any other person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**b.**     Does not include "bodily injury" or "property damage" arising out of:

**(1)**     The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured; or

**(2)**     The existence of tools, uninstalled equipment or abandoned or unused materials.

\*          \*          \*

**27.**   "Your product":

    **a.**   Means:

        **(1)**   Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

            **(a)**   You;

            **(b)**   Others trading under your name; or

            **(c)**   A person or organization whose business or assets you have acquired; and

        **(2)**   Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

    **b.**   Includes:

        **(1)**   Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product;" and

        **(2)**   The providing of or failure to provide warnings or instructions.

    **c.**   Does not include vending machines or other property rented to or located for the use of others but not sold.

*      *      *

**28.**   "Your work":

    **a.**   Means:

        **(1)**   Work or operations performed by you or on your behalf; and

        **(2)**   Materials, parts or equipment furnished in connection with such work or operations.

    **b.**   Includes:

        **(1)**   Warranties or representations made at any time with respect to the fitness, quality,

durability, performance or use of "your work"; and

**(2)**     The providing of or failure to provide warnings or instructions.

*As discussed above, the Additional Claims allege that the stucco work performed by you and/or Connolly Stucco was defective, and therefore needs to be removed and replaced.  To the extent that the Additional Claims allege or seek damages for "property damage" to real property on which you—or any contractor or subcontractor working directly and indirectly on your behalf—were performing operations, and if the alleged property damage arose from your operations, there would not be coverage under the Umbrella Policy for the Additional Claims.  Likewise, to the extent that the Additional Claims allege or seek damages for "property damage" to any part of any property that must be restored, repaired, or replaced because your work was incorrectly performed on it, there would not be coverage under the Umbrella Policies for the Additional Claims.*

The Umbrella Policy also excludes coverage for "property damage" to "your product" or "your work":

**n.     Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**o.     Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

*Accordingly, to the extent that the Additional Claims allege or seek damages for "property damage" to any goods or products manufactured, sold, handled, distributed, or disposed of by you, including warranties or representations made at any time with respect to the fitness, quality, durability, performance, or use of your product, there would not be coverage under the Umbrella Policy for the Additional Claims.  In addition, to the extent that the Additional Claims allege or seek damages for "property damage" to your work—that is, to the work or operations performed by you and/or on your behalf, including warranties or representations made at any time with respect to the fitness, quality, durability, performance, or use of your work—that is included in the "products-completed operations hazard," there would not be coverage under the Umbrella Policy for the Additional Claims.*

The Umbrella Policy also excludes coverage for "Damage To Impaired Property Or Property Not Physically Injured," such that the following is not covered by the Umbrella Policy:

24

**p.      Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)**      A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)**      A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

The Umbrella Policy defines the term "impaired property" as follows:

**8.**      "Impaired Property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.**      It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.**      You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work"; or your fulfilling the terms of the contract or agreement.

***Accordingly, to the extent that the Additional Claims allege or seek damages for "property damage" to tangible property—other than "your work" or "your product"—that cannot be used or is less useful because it incorporates "your work" or "your product" that was known to be defective, deficient, inadequate, or dangerous; and which was damaged by a defect, deficiency, inadequacy, or dangerous condition in "your work" or "your product," there would not be coverage under the Umbrella Policy for the Additional Claims. Similarly, to the extent that the Additional Claims allege or seek damages for "property damage" to property—other than "your work" or "your product"—that cannot be used or is less useful because it incorporates "your work" or "your product" that was known to be defective, deficient, inadequate, or dangerous, and which was damaged by a delay or failure by you—or anyone acting on your behalf—to perform a contract or agreement in accordance with its terms, there would not be coverage under the Umbrella Policy for the Additional Claims. Additionally, to the extent that the***

*Additional Claims allege or seek damages for "property damage" to tangible property—other than "your work" or "your product"—that cannot be used or is less useful because you have failed to fulfill the terms of a contract or agreement, and which was damaged by either a defect, deficiency, inadequacy, or dangerous condition in "your work" or "your product" or by a delay or failure by you—or anyone acting on your behalf—to perform a contract or agreement in accordance with its terms, there would not be coverage under the Umbrella Policy for the Additional Claims.*

The Umbrella Policy also includes a Fungi or Bacteria Exclusion endorsement, which provides as follows:

**2.    Exclusions**

This insurance does not apply to:

**FUNGI OR BACTERIA**

**a.**    "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

**b.**    Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating, or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for consumption.

The Umbrella Policy defines the term "fungi" to mean "any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or by-products produced or released by fungi."

*It is our understanding that one or more of the Additional Claims alleges that your defective construction work resulted in the growth of mold.  Accordingly, to the extent that the Additional Claims allege or seek damages for "property damage" that would not have occurred but for the presence of mold, there would not be coverage under the Umbrella Policy for the Additional Claims.*

The Umbrella Policy also excludes coverage for "Contractual Liability," which is defined as follows:

> "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.  This exclusion does not apply to liability for damages:
>
> > **(1)**   That the insured would have in the absence of the contract or agreement; or
> >
> > **(2)**   Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement.  Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided
> >
> > > **(a)**   Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and
> > >
> > > (b)   Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

The Umbrella Policy defines the term "Insured contract" to mean the following (in relevant part):

> **9.**   "Insured contract" means:
>
> > .     .     .
>
> > g.   That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization.  Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

27

*As noted above, White has alleged that the subcontracts require you to defend and indemnify it for its liability resulting from your work on the Project. Accordingly, to the extent that the Additional Claims or White's joinder arbitration demands in connection therewith allege or seek damages for which you assumed liability in a contract that is not an insured contract, there would not be coverage under the Umbrella Policy for the contractual liability claims related to the Additional Claims. Additionally, to the extent that the contract or agreement under which you agreed to assume the liability of another party, including White, is an "insured contract" but was not entered into until after the occurrence of the "property damage" alleged in the Additional Claims, there would not be coverage under the Umbrella Policy for the contractual liability claims related to the Additional Claims.*

The Umbrella Policy provides that if there is other insurance that would provide coverage for you in connection with the Additional Claims, the coverage under the Umbrella Policy would operate as follows:

    **5.**    **Other Insurance**

        **a.**    This insurance is excess over, and shall not contribute with any of the other insurance, whether primary, excess, contingent or on any other basis. This condition will not apply to insurance specifically written as excess over this Coverage Part.

            When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured. If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers

      **b.**    When this insurance is excess over other insurance, we will pay only our share of the "ultimate net loss" that exceeds the sum of:

        **(1)**    The total amount that all such other insurance would pay for the loss in the absence of the insurance provided under this Coverage Part; and

        **(2)**    The total of all deductible and self-insured amounts under all that other insurance.

*Accordingly, to the extent that you are entitled to other insurance coverage for the allegations in the Additional Claims, any coverage obligation MSAA may have under the Umbrella Policy would be excess to this other insurance. This includes, but is not limited to, any additional insured coverage to which you are entitled under an insurance policy issued to any subcontractors employed by you. We would therefore request that you advise us as to any other insurance coverage to which you might be entitled under any other policy of insurance.*

The Umbrella Policy contains an endorsement entitled "Pennsylvania Changes – Defense Costs." This endorsement provides as follows:

      B.     If we initially defend an insured ("insured") or pay for an insured's ("insured's") defense but later determine that none of the claims ("claims"), for which we provided a defense or defense costs, are covered under this insurance, we have the right to reimbursement for the defense costs we have incurred.

      The right to reimbursement under this provision will only apply to the costs we have incurred after we notify you in writing that there may not be coverage and that we are reserving our rights to terminate the defense or the payment of defense costs and to seek reimbursement for defense costs.

***Accordingly, to the extent that it is later determined that MSAA has no duty to defend you under the Umbrella Policy with respect to the Additional Claims, MSAA hereby reserves the right to seek to recover the defense costs it incurs in defending you against the Additional Claims.***

## IV.    <u>COVERAGE DETERMINATION</u>

Based on our review and evaluation of the Additional Claims and the information obtained during our investigation, MSAA has determined that, for the several reasons noted above, the Primary Policies and the Umbrella Policy may not provide coverage for some or all of the damages alleged against you in the Additional Claims. Specifically, as discussed above, the Primary Policies and the Umbrella Policy do not provide coverage for claims for "property damage" that is not the result of an "occurrence." In addition, the Primary Policies and the Umbrella Policy do not provide coverage for claims for "property damage" to your work, your product, or for the cost of repairing your own defective work. Moreover, as discussed above, several exclusions limit the potential coverage available to you for the damages alleged in the Additional Claims. For all of these reasons, MSAA has determined that there may not be coverage under the Primary Policies or the Umbrella Policy for some or all of the claims for damages asserted against you in the Additional Claims.

Notwithstanding the foregoing, MSAA agrees to continue to investigate the Additional Claims subject to a full and complete reservation of MSAA's rights under the Primary Policies, the Umbrella Policy, and applicable law. Additionally, MSAA agrees to provide a defense for you in connection with the Additional Claims pursuant to the terms of the Primary Policies, and subject to this reservation of rights. In connection with this reservation of rights, MSAA agrees to pay its fair share of the reasonable and necessary expenses in coordination with any other insurance carriers involved in this claim. As such, if there is any additional insurance coverage that may provide commercial general liability coverage for you in connection with the Additional Claims, we request that you provide that information to us immediately.

Please note that although MSAA will continue to provide you with a defense in connection with the Additional Claims, MSAA may not defend or indemnify you for any liability, settlement, judgment, or damages that result from certain acts, conduct, or omissions that are not covered under the Primary Policies or the Umbrella Policy. We must also advise you that there is no coverage under the Primary Policies or the Umbrella Policy for an award of damages that exceeds

the applicable policy limits.  Similarly, to the extent that the Additional Claims seek the recovery of punitive damages, there may not be coverage under the Primary Policies or the Umbrella Policy. **You should therefore retain personal counsel—at your own cost—to advise and represent you with respect to those issues, claims, and damages that are not covered by the Primary Policies or the Umbrella Policy**.

MSAA hereby reserves the right to continue to investigate the Additional Claims and the damages alleged in relation thereto.  MSAA further reserves its right to allocate between claims to which the Primary Policies and/or the Umbrella Policy apply, and those claims to which the Primary Policies and/or the Umbrella Policy do not apply; this includes any damages that exceed the applicable policy limits, and any claims for "property damage" to your own work or which occurred outside of the applicable policy period.  MSAA also reserves the right to allocate between any payments or settlements; and, to the extent permitted by law and the applicable policies, to pursue reimbursement of any and all payments made by MSAA for claims to which the Primary Policies and/or the Umbrella Policy do not apply.  No payment by MSAA shall constitute a waiver of its rights to later seek allocation or reimbursement if there is no duty to defend or indemnify any paid claim.  If MSAA learns of facts or other information indicating that the Primary Policies and/or the Umbrella Policy do not apply, MSAA further reserves the right to deny application of the Primary Policies and/or the Umbrella Policy, and to withdraw from any further participation in this matter.  Additionally, MSAA hereby reserves the right to file a declaratory judgment action against you and any other parties, in which MSAA will seek a ruling from a court of competent jurisdiction as to MSAA's duty to continue to defend you in connection with the Additional Claims and/or its duty to indemnify you under the Primary Policies or the Umbrella Policy.  Finally, pursuant to the "Pennsylvania Changes – Defense Costs" Endorsements, MSAA reserves the right under the terms and conditions of the Policy to seek reimbursement of the defense costs it expends to defend you for claims that are determined to not be covered under the Primary Policies and/or the Umbrella Policy.

MSAA's comments in this letter regarding specific provisions of the Primary Policies and/or the Umbrella Policy do not constitute a modification or waiver of any of those policies' provisions. MSAA does not waive its right to assert or rely on any term, condition, exclusion, or other provision of the Primary Policies, the Umbrella Policy, and/or applicable law not specifically addressed or referred to in this letter to deny or limit application of the Primary Policies and/or the Umbrella Policy.  By this letter, MSAA reserves all of its rights under the Primary Policies, the Umbrella Policy, and applicable law, including but not limited to its right to supplement or modify this letter should additional information become available that indicates that any other policy provision may provide, bar, or limit coverage.

As previously noted, this coverage determination is based on the information MSAA has received to date.  If the claims against you are expanded or modified in any manner—such as by the filing of an amended pleading—please immediately forward a copy of such amended claims or allegations to our attention.  MSAA will review these revised allegations to determine whether the insurance provided by the Primary Policies and/or the Umbrella Policy would apply to them. Moreover, please also contact us immediately if you disagree with this letter, or if you know of any different or additional facts or documents regarding this claim, the Additional Claims, or the relevant insurance policies that you believe may be important to our coverage determination.

MSAA will use the information you provide to ensure that it fully performs its obligations under the Primary Policies, the Umbrella Policy, and applicable law.

Please be sure to include the relevant claim number(s) set forth above on any materials sent to our office.

Sincerely,

*Terence Youngblood*

TERENCE YOUNGBLOOD
Sr. Claim Specialist
PO Box 2002
Keene, NH 03431-2053
904-380-7111
Fax 904 486-7888

cc:    Jeffrey C. Sotland, Esq.
       MINTZER SAROWITZ ZERIS LEDVA & MEYERS, LLP
       Centre Square, West Tower
       1500 Market St.
       Suite 4100
       Philadelphia, PA 19102